[Crim. Nos. 9516, 9517. Second Dist., Div. Two. Dec. 17, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. GEORGE PETER THEOBALD, Defendant and Appellant.

(Two Cases)

John P. Bruno, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and William L. Zessar, Deputy Attorney General, for Plaintiff and Respondent.

HERNDON, J.—Defendant appeals from the judgment entered against him in Los Angeles Superior Court Case

No. 271341 following a nonjury trial which resulted in his conviction of the crimes of possessing marijuana and peyote in violation of sections 11530 and 11500 of the Health and Safety Code. Defendant also purports to appeal from the judgment previously entered in Case No. 247507. The record before us indicates that appellant entered a plea of guilty in this earlier case and was granted probation.

However, the record further reveals that on September 27, 1963, an order was made that provided: "Probation is extended for two years beyond defendant's release from the County Jail in Case 271341 on original terms and conditions." Since appellant raises no contentions in reference to the conviction itself in this prior action, he apparently wishes us to review this order, which is the proper subject of an appeal, rather than the judgment itself (*In re Bine*, 47 Cal.2d 814, 817 [306 P.2d 445]; Penal Code, § 1237, subd. 3), and we shall so construe his notice of appeal filed therein.

As ground for seeking a reversal of the judgment in the principal case, appellant contends that certain of the contraband received in evidence against him was obtained by an unlawful search and seizure and that the remaining evidence was insufficient to support the judgment.

It may be noted initially that the information filed against appellant contained three counts charging him with (1) possession of marijuana for purposes of sale in violation of section 11530.5 of the Health and Safety Code; (2) possession of marijuana in violation of section 11530; and (3) possession of peyote in violation of section 11500. The trial court specifically and expressly refused to find that the narcotics were possessed for purposes of sale, but, on this count, did find appellant guilty of the necessarily lesser included offense of simple possession. As a result, appellant was found guilty of two identical counts of possession of marijuana. Manifestly, one of these counts cannot stand. Appellant was not charged with possession of the specified contraband on two different occasions nor was there any evidence to indicate the commission of two such separate offenses.

At any given point of time a person is either guilty of the crime of possessing marijuana or he is not. If, in fact, he is guilty, his crime cannot be compounded merely because various portions of the prohibited contraband possessed by him at the specified time are kept or deposited in different places. Therefore, when appellant was found not guilty of the more

serious crime of possessing marijuana for purposes of sale, that count should have been dismissed because the lesser included offense was separately charged in another count.

The evidence relating to the two remaining counts indicates that three officers from the Los Angeles Police Narcotic Detail responded to the call of a Mrs. Lavinger who managed an apartment building. She informed the officers upon their arrival at this building that she had discovered a box and a sack in a wooden cabinet that was built upon a fence marking the northern property line. The hinges on this cabinet were broken so that it could not be locked or securely closed. Therefore, being located in a public area, anyone who chose might gain entry thereto without breaking into it. The cabinet itself was located some 75 to 90 feet from appellant's apartment. The box and bag that were found therein contained substantial quantities of marijuana and peyote.

The officers learned from Mrs. Lavinger that two days earlier, appellant had asked her whether or not there was some place on the premises where he might store some of his personal belongings. She told the officers that she had advised him that he might use the cabinet. There was no evidence tending to indicate that appellant had ever accepted this offer. All of the items in the cabinet, other than the contraband, belonged to Mrs. Lavinger.

 Even if we were to assume that the officers had the right to rely fully on this information supplied by a party who theretofore was unknown to them, it appears beyond question that on the basis of this factual situation alone there was no evidence sufficient to justify convicting appellant of possessing the narcotics found in the cabinet nor even to arrest him on a charge of such possession. What member of the public has not at some time asked his landlord, his neighbor or his friend whether he knows of a place where certain of his property might be stored until needed? If, without more, he were to be arrested merely because two days later some narcotics were found in the readily accessible public area that had been indicated, would it be reasonable to say that his inquiry alone was sufficient justification for the arrest?

In the instant case, there was no evidence to indicate that appellant ever expressed any intention to avail himself of the proffered cabinet—which would appear to be a most unsuitable place for the storage of personal belongings of any value. Certainly, there is no evidence that he did so use it. Further, there was no evidence as to when Mrs. Lavinger had

examined the contents of the cabinet prior to her discovery of the narcotics; therefore, there was nothing to indicate that the contraband had not been placed in this cabinet prior to the time of appellant's inquiry.

■ The officers testified that they knew nothing of appellant prior to the occasion in issue. However, after concluding their conversation with Mrs. Lavinger, they determined to "contact" appellant. If this "contact" was for investigative purposes only, of course, it was entirely reasonable and proper. "[I]t is not unreasonable for officers to seek interviews with suspects or witnesses or to call upon them at their homes for such purposes." (*People* v. *Michael,* 45 Cal.2d 751, 754 [290 P.2d 852].)

The officer encountered appellant as he was about to drive away from the premises on his motorcycle. The engine was running. The evidence to this effect is undisputed. Thereafter, however, the testimony of the witnesses becomes sharply conflicting.

Officer Lopez testified that he and his two fellow officers approached appellant and told him only that they were conducting a narcotic investigation and that they would like to talk to him. They also told him that they wanted this conversation to be held in his apartment. Appellant, on the other hand, testified that immediately after the three officers had learned his identity, they told him that he was under arrest for violation of the narcotic laws.

Officer Lopez first denied, and then later admitted, that as the parties walked toward appellant's apartment, appellant asked them whether or not they had a warrant. Lopez testified that they told appellant that they did not have such a warrant. However, the officer stated that, despite this inquiry, appellant agreed to allow the officers to enter the apartment. He testified further that once they were within the apartment, they decided for the first time to ask appellant for his permission to conduct a search thereof and that appellant also voluntarily agreed thereto. The search uncovered a pipe containing burnt marijuana fragments and a package of new and folded "garbage bags," one of which also contained marijuana seeds and fragments.

Appellant testified that after the officers had placed him under arrest, they took him by the arm and led him back to his apartment. When he asked them if they had a search or arrest warrant, they said, "Shut up, punk. This is an incident to an arrest." He testified that he had moved into

the apartment only some three weeks earlier and had not completed unpacking or removing various items left therein by the prior tenants. He stated that he had never seen the pipe before, and, while he and his wife previously had used some of the "garbage bags" found in the package, all of these items had been found on the premises when he moved in and he had no knowledge of any narcotic debris that might have been present therein.

The issues presented for determination were thus narrowly and clearly drawn. If the additional scraps of contraband discovered in appellant's residence were the fruit of an illegal search, they could not properly be used either to support a conviction for their possession or to link appellant to the narcotics theretofore found in the publicly accessible cabinet outside his apartment. The first issue requiring determination was whether appellant had or had not been arrested on the street as he was preparing to leave the area. The question whether or not appellant, in fact, had consented thereafter to a search of his residence, and whether such consent was freely and voluntarily given, logically could not be decided until after a decision on the issue regarding his arrest and the legality thereof.

The trial judge expressly declared his determination that appellant had been arrested *prior* to the search of his apartment. Although it is true that officer Lopez had testified that they had *not* told appellant he was under arrest, and, in fact, that they had not arrested him, the trial court is the sole arbiter of factual matters on which the testimony of the parties is squarely conflicting. The court below chose to resolve this conflict by accepting the testimony of appellant rather than that of the officer, and it is beyond our province to disturb such resolution. ". . . It is the function of the [trier of the fact], and not of this court, to choose between the conflicting testimony of the parties." (*People* v. *Robinson*, 61 Cal.2d 373, 392 [38 Cal.Rptr. 890, 392 P.2d 970].)

Although the trial judge did not state expressly his finding as to whether appellant had or had not voluntarily consented to the entry and search of his apartment following his arrest, his determination to accept appellant's testimony regarding the arrest itself is some indication that he did not credit the officer's version of the events here in issue. Further, since the officer eventually did admit that appellant had inquired about a warrant after his arrest, it appears highly improbable that his conduct was anything other than a grudging sub-

mission to authority. (Cf. *Castaneda* v. *Superior Court,* 59 Cal.2d 439, 442-443 [30 Cal.Rptr. 1, 380 P.2d 641].)

■ However, we need not pass upon the question whether the consent, assuming that it was given, could have been deemed effective in the instant case, since, as we have already indicated, there was no evidence whatsoever that would have justified the arrest of appellant that the trial court found had occurred. Some solid evidence must exist to uphold an arrest without a warrant. (*Beck* v. *Ohio,* 376 U.S. 905 [84 S.Ct. 664, 11 L.Ed.2d 604].) "Reasonable cause [for an arrest without a warrant] has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime. (Citations.) ■ Probable cause has also been defined *as having more evidence for than against;* supported by evidence which inclines the mind to believe, but leaves some room for doubt. (Citations.)" (Italics added.) (*People* v. *Ingle,* 53 Cal.2d 407, 412-413 [348 P.2d 577].)

■ At best, the evidence in the instant case gave the officers no more than grounds for seeking an interview with appellant as part of their investigation of the narcotics found in the cabinet. The investigating officer himself did not indicate that he entertained the belief that he had any greater right. Since the arrest itself was clearly illegal, any subsequent consent that may have been given would have been inoperative in any event. "A search and seizure made pursuant to consent secured immediately following an illegal entry or arrest, . . . is inextricably bound up with the illegal conduct and cannot be segregated therefrom." (*People* v. *Haven,* 59 Cal.2d 713, 719 [31 Cal.Rptr. 47, 381 P.2d 927].)

■ In addition, of course, even if it could rationally be contended that the mere existence of narcotics for an unknown length of time in an open cabinet readily accessible to the public generally could supply reasonable ground for arresting a person previously unknown to the arresting officers because another person, theretofore also unknown to them, had informed them that the first person had made a casual inquiry regarding the possible storage of his personal property, nevertheless a subsequent search of that person's residence could not be justified when the arrest itself was not made therein. In *People* v. *Cruz,* 61 Cal.2d 861, 865 [40 Cal.Rptr. 841, 395 P.2d 889], it is stated:

"At the trial the prosecution sought to justify the search and seizure of the blue suitcase and its contents on the ground that the search was incidental to the valid arrest of defendant. That arrest, however, was not effectuated *on the premises thereafter searched,* but in a car parked on a public street. It follows that the search was not in fact 'incidental to' defendant's arrest under the settled construction of that phrase by the federal and California courts, for 'it was at a distance from the place thereof and was not contemporaneous therewith'. (Citations.)

"It is urged, however, that the search should be held to be 'incidental to' the arrest because the car wherein defendant was arrested was parked only 'A few feet south of the address, perhaps one door or two doors below' the apartment house in question. But while a search incidental to an arrest 'may, under appropriate circumstances, extend beyond the person of the one arrested to include the premises under his immediate control' (citation), it is manifest that at the time of the arrest in the case at bench the automobile in which defendant was apprehended was the only 'premises [property] under his immediate control' within the meaning of this rule. Even a house owned or rented by the person subsequently charged cannot be searched without a warrant 'except as an incident to a lawful arrest therein' (*Chapman* v. *United States* (1961) 365 U.S. 610, 613 [81 S.Ct. 776, 5 L.Ed.2d 828, 831], quoting from *Agnello* v. *United States* (1925) *supra,* 269 U.S. 20, 32 [46 S.Ct. 4, 70 L.Ed. 145, 149, 51 A.L.R. 409, 413) ; *a fortiori,* the search of an apartment where the subject defendant was at most a nonpresent guest cannot be justified by an arrest that was not made on the premises. It is true that in *Agnello, Tompkins* [59 Cal.2d 65 (27 Cal.Rptr. 889, 378 P.2d 113)], and the other cases cited hereinabove, the arrest took place several blocks or more from the premises thereafter searched; it is also true that the closer the arrest is to the premises, the more arbitrary this rule may tend to appear. But this is only an appearance of arbitrariness, a phenomenon that often occurs as differing fact situations arise and approach a line drawn by the law. The rule itself is sound and, above all, workable (see *People* v. *Cahan* (1955) 44 Cal.2d 434, 451 ▌ [282 P.2d 905, 50 A.L.R.2d 513]), and should serve to guide law enforcement officers as they conscientiously seek to perform their duty within the ambit of the constitutional guarantees. To abide by the rule ourselves (and to clarify it for those who must work under it in the field) we are constrained to hold that a search is not 'incidental to an

arrest' unless it is limited to the premises where the arrest is made; is contemporaneous therewith; has a definite object; and is reasonable in scope.'' (Italics supplied by the Supreme Court.)

Since the judgment of conviction in the instant case necessarily must be reversed, it follows that the order extending appellant's probation in superior court Case No. 247507 must likewise be reversed, since it appears to have been founded solely upon appellant's conviction in the instant action.

The judgment in Case No. 271341 is reversed. The order extending probation in Case No. 247507 is reversed and the cause is remanded to the superior court for further consideration in the light of our disposition of Case No. 271341.

Roth, P. J., and Fleming, J., concurred.