[Crim. No. 15576. In Bank. May 4, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
MANUEL SOTO MEDINA, Defendant and Appellant.

**COUNSEL**

Howard E. Beckler for Defendant and Appellant.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, William E. James, Assistant Attorney General, Robert F. Katz and Ronald S. Marks, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**McCOMB, J.**—Defendant was charged with possession of heroin for sale in violation of section 11500.5, Health and Safety Code. He waived a

jury trial and submitted the matter to the court on the transcripts of the preliminary hearing and of the hearing on his motion to suppress evidence made under section 1538.5 of the Penal Code. Motion for new trial on the ground that the evidence was procured by an unreasonable search was denied. The proceedings were then suspended and defendant was placed on probation. One condition was that he spend six months in the county jail.

The sole issue urged on appeal is that the search which followed the arrest exceeded permissible limits and that the fruits thereof were illegally obtained. ■ An appeal may be taken from an order granting probation (Pen. Code, § 1237). ■ The legality of the search may be reviewed on appeal (Pen. Code, § 1538.5, subd. (m)). The date of search was November 7, 1968, and legality must be scrutinized under pre-*Chimel* standards.[1]

The facts leading to defendant's arrest are as follows. Officer Robert G. Miller, Los Angeles Police Department Narcotics Division, received information on June 26, 1968, from a named informer whose reliability had not previously been tested, that a Manuel Medina was dealing and selling heroin in ¼ ounces. He placed the home of the informer under surveillance, saw defendant get out of a green and white Ford pickup in front of the house, saw him knock on the door and peek in the window, and, when no one opened the door, return to the pickup and drive off. Miller traced the ownership of the pickup to a Manuel Medina residing at 15814 Cobalt, Sylmar, Los Angeles County. He discovered that Manuel Medina had lived at that address for 14 years.

On July 18 another untested but named informer told Miller that Manuel Medina was selling heroin in ½-gram or dime bag balloons; that she had gone out with other persons "to score" or purchase heroin from Medina; that in order to score they first had to place a phone call and would then usually meet in the parking lot behind Denny's resturant in Sylmar next to the Golden State Freeway; that on several occasions she had observed defendant drive to this parking lot after such a telephone call; and that on one occasion she had seen "his stash" in his truck at the parking lot and that there must have been 1,000 dime balloons. This parking lot was about two blocks from the Cobalt Avenue home of defendant.

---

[1]*Chimel* v. *California* (1969) 395 U.S. 752, 763 [23 L.Ed.2d 685, 694, 89 S.Ct. 2034], limits the permissible scope of searches made incidental to a valid arrest but without a warrant to the arrestee's person and the area "within his immediate control," construing that phrase to mean the area from which he might gain possession of a weapon or destructible evidence. The rule is not retrospective. (*Williams* v. *United States* (1971) 401 U.S. 646, 651 [28 L.Ed.2d 388, 394, 91 S.Ct. 1148]; *People* v. *Edwards* (1969) 71 Cal.2d 1096, 1108 [80 Cal.Rptr. 633, 458 P.2d 713].)

About 2 p.m. on November 7, 1968, Miller received information regarding defendant from a confidential, tested informant whose identity he refused to reveal on the ground that such disclosure might endanger the life and safety of the informant (Evid. Code, § 1042, subd. (c)). The trial court refused to grant defendant's motion for discovery of the identity of this informant after Miller testified as to his prior reliability. The informant gave Miller the address of defendant (15814 Cobalt), and described the green and white pickup. He told Miller that defendant was selling heroin from his home, that his wife knew of the sales, and that she did not involve herself in the sales. The informant told Miller that he had been at defendant's home four times in the past two weeks; that he had purchased heroin from defendant there; that usually another person went with him; that on occasion the informant remained outside in a vehicle parked at the curb rather than going to the door; that he had never seen defendant's stash but that it was around the house or garage; and that on those occasions defendant would leave his sight but would not leave the property when getting heroin.

Whether or not there was probable cause for either an arrest or search warrant at the time Miller received this information, he had a right and a duty to make an investigation. He immediately made preparations to place defendant's residence on Cobalt and the parking lot at Denny's Restaurant under surveillance. He and a fellow officer stationed themselves at a vantage point on the Golden State Freeway near an offramp watching the residence from behind the lifted hood of an automobile. Five officers were stationed in the parking lot. It was then 4:15 p.m.

A few minutes after Miller arrived he observed defendant pull into the driveway in his green and white pickup and park. The driveway led to an open garage set back toward the rear of the lot and separated from the house by lawn area. Defendant remained in the car while his wife came out of the house and walked over to the driver's door. She stood there talking to him for three or four minutes. Defendant then alighted and the two walked to the lawn area in front of the house. They stood within five or six feet of the street looking up and down the street for five to ten minutes. Then defendant walked back to the pickup while his wife remained on the lawn looking up and down the street.

Miller, watching through binoculars, saw defendant open the driver's door, reach in back of the seat, then close the door. He saw that defendant held in his right hand a white bag-type object which appeared to be rolled into a cylinder about five inches long and three to four inches in diameter. Defendant walked into the garage where he was out of Miller's view. He then returned to the front yard where he stood talking with his wife for

about 30 seconds. Both then went into the house. Defendant had nothing in his hand when he returned from the garage to the yard and entered the house.

About five minutes later a vehicle drove very slowly by the address and parked approximately 40 feet away. Miller recognized the passenger as Robert (Lefty) Lopez, a known narcotic user and dealer. He saw Lopez leave the car and go to the front door, saw defendant come out and walk with Lopez to the garage, both gesticulating with their hands as they went and apparently carrying on a conversation. They remained in the garage out of view about one minute. When they emerged Lopez had his right hand in a clenched position and it remained clenched until he left Miller's view. Defendant remained on the lawn. He was still standing there when the officers arrived about four minutes later. The time was then about 4:30 p.m.

By reason of his prior information and experience, Miller concluded, from his observation of defendant's movements and actions in the yard-garage area, that he had just witnessed a felony in the garage and that he had grounds for an immediate arrest and search without a warrant. He proceeded at once to the Cobalt address, stopping en route to alert the officers waiting at the parking lot, and several cars filled with officers descended upon the scene. The fact of the arrest must have been obvious to. anyone in the house. Miller knew that defendant's wife was in the house but he had not verified whether there was anyone else in the house or on the premises. While they were still on the lawn defendant's adult daughter arrived in a car. There were reasonable grounds for believing that opportunity to search was fleeting and that the evidence in the garage might disappear while Miller sought an arrest warrant.

Medina was immediately placed under arrest without a warrant pursuant to Penal Code section 836, subdivision 3 (reasonable cause to believe the person to be arrested has committed a felony, whether or not a felony has in fact been committed). He was immediately searched. No weapons, contraband, money or evidence were found on his person.

Search of the garage followed within "maybe less than a minute" according to Miller's testimony. There were no vehicles inside the open garage. The storage area was clearly visible to anyone standing on the driveway outside the garage. Within immediate reach inside the garage entrance was a tin can on a wall brace on the west wall which contained four loose colored balloons on top of nuts and bolts. On a rear shelf was a knee-high boot containing a white cloth bag filled with 55 colored balloons. The balloons in the can and in the boot were each tied with a white string. Each

contained a white powder. In Miller's expert opinion this substance was heroin. Chemical tests proved this to be true. Also found on a shelf was a can of lactose milk sugar powder, a substance which he knew was used for the purpose of cutting heroin. Numerous empty colored balloons were found. They found no money.

At the police station defendant voluntarily stated to Miller several times that the stuff was all his, that he knew he would get caught sooner or later, and that he was glad it was all over.

*Issue: Was the search of Medina's garage under the circumstances a violation of his Fourth Amendment rights?*

*No.* ■ The Fourth Amendment to the United States Constitution, and its counterpart, article I, section 19, of the California Constitution, protect the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and prohibit the issuance of a warrant except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized. The meaning of these words, and the evils which the Fourth Amendment was designed to prevent, have had a long history of judicial construction. Problems arise in the application of these protections which have been perplexing at times not only to law enforcement officers but to the courts. The Supreme Court of the United States observed in *Chimel* (*supra,* 395 U.S. 752, 755 [23 L.Ed.2d 685, 689]) that its decisions on Fourth Amendment law have not always been unanimous nor consistent. In *Coolidge* v. *New Hampshire* (1971) 403 U.S. 443 [29 L.Ed. 2d 564, 91 S.Ct. 2022], it recognized that it has not reduced such law to complete order and harmony, stating (*id.,* 403 U.S. p. 483 [29 L.Ed.2d p. 593]) that "The time is long past when men believed that the development of law must always proceed by the smooth incorporation of new situations into a single coherent analytical framework."

We proceed then to review the challenged search in the light of the pre-*Chimel* authority, *United States* v. *Rabinowitz* (1950) 339 U.S. 56 [94 L.Ed. 653, 70 S.Ct. 430], and the clarifying rules adopted by this court in *People* v. *Cruz* (1964) 61 Cal.2d 861, 866 [40 Cal.Rptr. 841, 395 P.2d 889], pursuant to the suggestion in *Ker* v. *California* (1963) 374 U.S. 23, 34 [10 L.Ed.2d 726, 738, 83 S.Ct. 1623], that states adopt workable rules for determining when a search is unreasonable.

*Rabinowitz* recognized that "What is a reasonable search is not to be determined by any fixed formula" and that "The recurring questions of the reasonableness of searches must find resolution in the facts and circum-

stances of each case" (339 U.S. 56, 63 [94 L.Ed. 653, 659]). *Chimel* approves this but adds the limitation "viewed in the light of established Fourth Amendment principles" (*Chimel* v. *California, supra,* 395 U.S. 752, 765 [23 L.Ed.2d 685, 695]).

■ Whenever practicable law enforcement officers must obtain advance judicial approval of searches and seizures through the warrant procedure and in most instances failure to comply with the warrant requirement can only be excused by *exigent* circumstances. (*Terry* v. *Ohio* (1967) 392 U.S. 1, 20 [20 L.Ed.2d 889, 905, 88 S.Ct. 1868].) The burden is upon those seeking an exemption to show the need for it. (*McDonald* v. *United States* (1948) 335 U.S. 451, 455-456 [93 L.Ed. 153, 158-159, 69 S.Ct. 191]; *United States* v. *Jeffers* (1951) 342 U.S. 48, 51 [96 L.Ed. 59, 64, 72 S.Ct. 93].) ■ The analysis required to determine whether there is probable cause to search is basically the same in situations involving a search with and a search without a warrant. (*Spinelli* v. *United States* (1969) 393 U.S. 410, 417, fn. 5 [21 L.Ed.2d 637, 644, 89 S.Ct. 584].) Courts scrutinize carefully applications made for warrants and perhaps even more closely cases brought before them in which a showing is made that the search was without a warrant. Where there are exigent circumstances the requirement of a warrant may be relaxed (see *Carroll* v. *United States* (1925) 267 U.S. 132 [69 L.Ed. 543, 45 S.Ct. 280]) but there must always be a showing made of probable cause for the arrest and of reasonableness of the search made incident thereto without a warrant or without consent.

Defendant does not challenge the validity of his arrest. Its validity must be scrutinized by this court, however, in order to determine the validity of the search made incident thereto without a warrant. ■ The rule requiring probable cause "should not be understood as placing the ordinary man of ordinary care and prudence and the officer experienced in the detection of narcotics offenders in the same class. Circumstances and conduct which would not excite the suspicion of the man on the street might be highly significant to an officer who had had extensive training and experience in the devious and cunning devices used by narcotics offenders to conceal their crimes." (*People* v. *Superior Court [Kiefer]* (1970) 3 Cal.3d 807, 827 [91 Cal.Rptr. 729, 478 P.2d 449], quoting with approval from *People* v. *Williams* (1961) 196 Cal.App.2d 726, 728 [16 Cal.Rptr. 836].) ■ The circumstances and facts within Officer Miller's knowledge, and the reasonably trustworthy information upon which he relied, were sufficient in themselves to warrant a man of reasonable caution in the belief that an offense had been or was being committed (*Ker* v. *California, supra,* 374 U.S. 23, 34-35 [10 L.Ed.2d 726,

738-739]), namely, that a sale of heroin had just occurred in the garage and that defendant kept heroin in the garage for purpose of sale. There was probable cause not only for the arrest but for the search which followed.

Had time or circumstances permitted it cannot be doubted that a search warrant could have been obtained by Miller. It is noted that in *Vale* v. *Louisiana* (1970) 399 U.S. 30, 34, 35 [26 L.Ed.2d 409, 413, 414, 90 S.Ct. 1969], the majority opinion points out that the officers there had obtained arrest warrants and it states that there was no reason to suppose that it was impracticable for them to have also obtained a search warrant; further, it notes that the officers knew that there was no one in the house, thus rejecting the state's contention that there might be someone who could remove, hide or destroy the evidence before a search warrant could be obtained. Here, however, Miller knew that defendant's wife was in the house, and defendant's adult daughter arrived while the officers were still on the lawn area. There was a possibility of fleeting opportunity to search and possible destruction of evidence or contraband should the officers postpone the search in order to obtain a warrant.[2]

■ Under the rules adopted by this court in *People* v. *Cruz, supra,* 61 Cal.2d 861, 866, for determining when a search is incidental to an arrest, the search must be limited to the premises where the arrest is made; must be contemporaneous therewith; have a definite object; and be reasonable in scope.

Search of premises where the arrest is made has been construed to mean that the arrest and search must take place on the same premises, and that those premises be under the possession and control of the arrestee. Pre-*Chimel* searches of an apartment garage, immediately following arrest of the occupant in the apartment [held to be on the same premises, within possession and control of the arrestee] were found not to be unreasonable in *People* v. *Woods* (1966) 239 Cal.App.2d 697, 704 [49 Cal.Rptr. 266], certiorari denied, 385 U.S. 950 [17 L.Ed.2d 228, 87 S.Ct. 325]; *People* v. *Rodriguez* (1965) 238 Cal.App.2d 682, 688 [48 Cal.Rptr. 117], certiorari denied, 385 U.S. 951 [17 L.Ed.2d 228, 87 S.Ct. 328]; *Trowbridge* v. *Superior Court* (1956) 144 Cal.App.2d 13, 18 [300 P.2d 222]; see also *People* v. *Dixon* (1956) 46 Cal.2d 456, 459 [296 P.2d 557] [remanded for determination of validity of arrest]. In *Harris* v. *United States* (1947) 331 U.S. 145 [91 L.Ed. 1399, 67 S.Ct. 1098], search beyond the room in which the arrest was made (i.e., other rooms in the apartment) was held not to be unreasonable The court there stated (*id.*, p. 151 [91 L.Ed. pp. 1405-

---

[2]See *United States* v. *Doyle* (5th Cir. 1972) 456 F.2d 1246.

1406]) "The opinions of this Court have clearly recognized that the search incident to arrest may, under appropriate circumstances, extend beyond the person of one arrested to include the premises under his immediate control."

Incidental search made on *different* premises from where the arrest was effected, although within a few feet thereof, were held to be unreasonable in *Shipley* v. *California* (1969) 395 U.S. 818 [23 L.Ed.2d 732, 89 S.Ct. 2053] [arrest in car]; *People* v. *Cruz, supra,* 61 Cal.2d 861 [arrest in car]; *People* v. *Henry* (1967) 65 Cal.2d 842 [56 Cal.Rptr. 485, 423 P.2d 557] [arrest on sidewalk]; *People* v. *Jasso* (1969) 2 Cal.App.3d 955, 965 [82 Cal.Rptr. 229] [arrest in car]; *People* v. *Theobald* (1964) 231 Cal.App. 2d 351, 355 [41 Cal.Rptr. 758] [arrest on motorcycle]. Also significant in each of those cases was the fact that search was of a private *dwelling*.

Incidental searches made where there were both spatial and time differences were held to be unreasonable in *Agnello* v. *United States* (1925) 269 U.S. 20, 31 [70 L.Ed. 145, 148, 46 S.Ct. 4], and *James* v. *Louisiana* (1965) 382 U.S. 36 [15 L.Ed.2d 30, 86 S.Ct. 151] (several blocks from arrest to search of dwelling); *Preston* v. *United States* (1964) 376 U.S. 364, 368 [11 L.Ed.2d 777, 781, 84 S.Ct. 881] (arrest in car, car later searched elsewhere); *Coolidge* v. *New Hampshire, supra,* 403 U.S. 443 (arrest in house, car later searched elsewhere); *Stoner* v. *California* (1964) 376 U.S. 483, 486 [11 L.Ed.2d 856, 859, 84 S.Ct. 889] (arrest in one state, search in another state two days later).

 Where the arrest and search are simultaneous in time and the spatial distance is minimal it may appear arbitrary to require that the premises be the same and that the premises be under the arrestee's possession and control; or to distinguish situations where the premises are the same but there is as here a distance of some 75 feet between the place of arrest and place of search. This is only an appearance of arbitrariness, however, — a phenomenon that often arises, as this court observed in *People* v. *Cruz, supra,* 61 Cal.2d 861, 866, as different fact situations arise and approach a line drawn by law. Prior to *Chimel,* in most instances distance was neither the sole nor the controlling consideration. (*People* v. *Aleria* (1961) 193 Cal.App.2d 352, 355 [14 Cal.Rptr. 162].)

Reasonableness of search incident to an arrest may depend on whether there is a substantial connection between the arrest and search, such that they may be held to be a continuous transaction. (*People* v. *Parker* (1970) 11 Cal.App.3d 500, 507-508 [89 Cal.Rptr. 815].) Here, as in *Parker,* the connection between the arrest and search was continuous and "plain for all to see." There was probable cause for arrest and for search; arrest and

search were made simultaneously, on the same premises; the premises were under the control and possession of the arrestee; and the place searched had a closer connection to the arrest than merely being a part of the premises where the arrest took place. There were articulable reasons for Miller to conclude that the garage was the place where a felony had been and was being committed (sale, and possession for sale of heroin) and that specific evidence (heroin) would be found therein. (See *People* v. *Rodriguez, supra,* 238 Cal.App.2d 682, 690, cert. den., 385 U.S. 951 [17 L.Ed.2d 228, 87 S.Ct. 328]; *People* v. *Aleria, supra,* 193 Cal.App.2d 352, 355-360, cert. den., 374 U.S. 832 [10 L.Ed.2d 1055, 83 S.Ct. 1876]; *People* v. *Kendall* (1963) 212 Cal.App.2d 472, 477 [28 Cal.Rptr. 53].)

There was no general rummaging among defendant's belongings. Search was limited and it had a definite object. Miller expected to find, and he found, contraband (heroin), instrumentalities (colored balloons), and evidence (white bag with balloons). He found no fruits (money) but he did find other incriminating evidence (milk sugar).

Reasonableness of a search may depend on the degree of invasion of privacy which occurs. Here there was no "thorough search of petitioner's *home extended without reasonable justification* beyond the place in which he was arrested" condemned in *Shipley* (*supra,* 395 U.S. 818, 820 [23 L.Ed.2d 732, 734-735]). (Italics added.) There was no search of a private dwelling condemned in *Vale* (*supra,* 399 U.S. 30). ■ The degree of intrusion of a garage is significantly less than that of a man's house although both are subject to Fourth Amendment protections.

The degree of intrusion here is significantly different than in *People* v. *Hobbs* (1969) 274 Cal.App.2d 402 [79 Cal.Rptr. 281]. In *Hobbs* there was probable cause for believing that the garage contained stolen goods and for obtaining a search warrant. The garage was located only 10 feet from the arrestee's dwelling, but the garage was padlocked and the arrest was made several miles away and an hour earlier. The warrantless search was properly held not to be incident to the arrest. The present case is also distinguishable from *People* v. *Landry* (1969) 276 Cal.App.2d 370 [80 Cal.Rptr. 880]. There arrest was effected on a road near the house, and a warrantless search was made of a locked dwelling and of a detached locked shed an hour and 15 minutes after the arrest. In *People* v. *Superior Court (Arketa)* (1970) 10 Cal.App.3d 122 [89 Cal.Rptr. 316], the arrest took place 20 feet from a closed shed. The shed was not owned by the arrestee, the officers had no reason to believe that it was under his possession and control, and a general search thereof, without a warrant and without consent, was held to be unreasonable. Warrantless search of a place of concealment in a yard adjacent to a private house was upheld as incident

to a lawful arrest in *People* v. *Medina* [not this defendant] (opinion filed January 20, 1972) 6 Cal.3d 484 [99 Cal.Rptr. 630, 492 P.2d 686].

■ The guiding principle is that enunciated by the United States Supreme Court in *Terry* v. *Ohio* (1968) 392 U.S. 1, 9 [20 L.Ed.2d 889, 899, 88 S.Ct. 1868]: "We have recently held that 'the *Fourth Amendment protects people, not places'* (*Katz* v. *United States,* 389 U.S. 347, 351 (1967) *and wherever an individual may harbor a reasonable 'expectation of privacy', id.,* at 361 (Mr. Justice Harlan, concurring), *he is entitled to be freed from unreasonable governmental intrusion.* Of course, the specific content and incidents of this right must be shaped by the context in which it is asserted. For 'what the Constitution forbids is not all searches and seizures but unreasonable searches and seizures.' *Elkins* v. *United States,* 364 U.S. 206, 222 (1960) . . . ." (Italics added.) In *Katz* v. *United States* (*supra,* 389 U.S. 347, 350-353 [19 L.Ed.2d 576, 581-583]), the court emphasized that the doctrine of "constitutionally protected areas" cannot serve as a talismanic solution to every Fourth Amendment problem.

Under all the facts and circumstances of this case, considered in the light of Fourth Amendment principles enunciated by the United States Supreme Court as of the time of the arrest and search, it cannot be held that either the arrest or incidental search was unreasonable.

Judgment is affirmed.

Wright, C. J., Mosk, J., and Burke, J., concurred.

**TOBRINER, J.**—I dissent.

Defendant was convicted of possession of heroin for sale in violation of Health and Safety Code section 11500.5. His only contention on appeal is that heroin-filled balloons and other evidence introduced against him should have been suppressed as the product of an unlawful search and seizure. The Attorney General, lacking a search warrant, seeks to justify the seizure of this evidence as incident to defendant's arrest. This arrest took place on defendant's front lawn; the evidence was seized following a search of defendant's garage, a detached building located at the rear of defendant's property some 75 feet from the place of arrest.

Although we recognize that, since this search took place before *Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], the search need not be confined to the area from which defendant might gain possession of a weapon or destructible evidence, the search nevertheless fails. Under pre-*Chimel* law the decisions of the United States Supreme

Court have established that "[a]' "search may be incident to an arrest only if it is substantially contemporaneous with the arrest and is confined to the *immediate* vicinity of the arrest." ' " (*Vale* v. *Louisiana* (1970) 399 U.S. 30, 33 [26 L.Ed.2d 409, 413, 90 S.Ct. 1969]; *Shipley* v. *California* (1969) 395 U.S. 818, 819; *Stoner* v. *California* (1964) 376 U.S. 483, 486 [11 L.Ed.2d 856, 859, 84 S.Ct. 889].) (Italics in original.) To extend a search following an outdoor arrest to the interior of a building 75 feet distant from the place of arrest is clearly to venture beyond the legal domain of permissible warrantless search and to trespass into the area of the forbidden as delineated in those decisions. We have concluded that the superior court erred in denying defendant's motion to suppress the seized evidence; since that error was plainly prejudicial, the judgment of the superior court should be reversed. We proceed to set forth our reasons for that result.

We begin with a factual summary of the search and the events preceding it. On November 7, 1968, Police Officers Miller and Walsh learned from three informants—one reliable, the other two of untested reliability—that defendant was dealing in heroin; the officers thereupon undertook the surveillance of defendant's residence. They arrived about 4:15 p.m. on November 7, 1968, and a few minutes later observed defendant drive up in a pickup truck. Defendant's wife came out of the house and conversed with defendant for four or five minutes. Defendant then left the truck; he and his wife stood on the front lawn looking up and down the street for five to ten minutes. Defendant walked back to the truck, reached behind the seat, removed a white cylindrical cloth object, and proceeded to the garage at the rear of the property. There he remained for about 30 seconds. The officers, however, could not observe defendant's actions in the garage. After defendant returned from the garage he and his wife went into the house.

About 4:35 p.m. a car drove slowly past defendant's house and parked 40 feet away from it. A passenger whom Miller recognized as Robert Lopez, a known narcotic user, left the car and knocked at defendant's front door. Defendant came out; both men then went into the garage, staying about one minute. When they emerged Lopez clenched his right hand. Lopez returned to his car and drove off; defendant went to his front yard and began watering the lawn.

The officers decided that they had witnessed a sale of narcotics. After obtaining assistance from other officers waiting nearby, Officer Miller arrested defendant in his front yard.[1] Miller and other officers then went to the

---

[1] Defendant's wife was arrested in the house. She is not a defendant in the proceeding and the record gives no details concerning her arrest. The People do not attempt to justify the search and seizure at issue as incident to her arrest, but limit their argument to the contention that the search was incident to defendant's arrest.

garage and searched that building. They discovered a boot on a rear shelf which enclosed a white cloth bag filled with balloons of heroin. A tin can on a wall brace contained, in addition to nuts and bolts, four balloons of heroin. The officers also discovered numerous empty balloons and a can of milk sugar, a substance used to dilute heroin.

Defendant was charged with possession of heroin for sale. He moved to suppress the evidence under Penal Code section 1538.5. When that motion was denied, he waived jury trial and submitted the case on the transcripts of the preliminary hearing and the 1538.5 hearing. The court found defendant guilty and placed him on probation for four years on condition that he spend the first six months in the county jail. The case comes here on defendant's appeal.

Since this search antedates the Supreme Court decision in *Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], the rules established by that decision do not govern the present case. (*Williams* v. *United States* (1971) 401 U.S. 646 [28 L.Ed.2d 388, 91 S.Ct. 1148]; *People* v. *Edwards* (1969) 71 Cal.2d 1096, 1108 [80 Cal.Rptr. 633, 458 P.2d 713].) Thus the issue before us turns on whether under pre-*Chimel* standards the warrantless search of a garage can be upheld as incident to the arrest of a defendant 75 feet distant from that building.

The opinion of the Supreme Court in *Vale* v. *Louisiana* (1970) 399 U.S. 30 [26 L.Ed.2d 409, 90 S.Ct. 1969], provides the standard by which the present case should be decided. Vale was arrested on the front steps of his house by officers who then proceeded to search the house, discovering narcotics in one bedroom. The court held the search illegal.

The Supreme Court opinion reads: "The Louisiana Supreme Court held that the search of the house did not violate the Fourth Amendment because it occurred 'in the immediate vicinity of the arrest' of Donald Vale and was 'substantially contemporaneous therewith . . . .' 252 La., at 1070, 215 So.2d at 816. We cannot agree. . . . [E]ven if *Chimel* is not accorded retroactive effect . . . no precedent of this Court can sustain the constitutional validity of the search in the case before us. [Par.] A search may be incident to an arrest ' "only if it is substantially contemporaneous with the arrest and is confined to the *immediate* vicinity of the arrest." ' *Shipley* v. *California,* 395 U.S. 818, 819; *Stoner* v. *California,* 376 U.S. 483, 486. If a search of a house is to be upheld as incident to an arrest, that arrest must take place *inside* the house . . . not somewhere outside—whether two blocks away, *James* v. *Louisiana,* 382 U.S. 36, twenty feet away, *Shipley* v. *California, supra,* or on the sidewalk near the front steps. 'Belief, however well founded, that an article sought is concealed in a dwelling

house furnishes no justification for a search of that place without a warrant.' *Agnello* v. *United States* [269 U.S. 20, 33]. That basic rule 'has never been questioned in this Court.' *Stoner* v. *California, supra,* at 487, fn. 5." (399 U.S. at pp. 33-34 [26 L.Ed.2d at p. 413].)

The majority opinion seeks to distinguish *Vale* on several grounds. It first notes that in *Vale* the officers had obtained arrest warrants and could have readily obtained a search warrant also; the officers in the present case had no warrant of any kind. They did, however, have sufficient grounds to secure search and arrest warrants. (See *People* v. *Prewitt* (1959) 52 Cal.2d 330, 337 [341 P.2d 1].) Thus in both *Vale* and the present case the officers had sufficient information and opportunity to obtain search warrants, but chose instead to search incident to an arrest. The distinction thus narrows to one of the presence or absence of an arrest warrant, a matter which seems immaterial since the lack of an arrest warrant does not expand the bounds of the area which may be searched incident to the arrest.

The majority opinion also points out that in *Vale* the officers knew the house was unoccupied; in the present case defendant's wife was in the house, and his daughter arrived while the officers were still there. Consequently the opinion concludes that in the present case there was a possibility that evidence might be destroyed if the officers delayed to get a warrant.

The risk that defendant's wife would destroy evidence seems remote, since other officers had entered the house to arrest her at the time Miller searched the garage. The arrival of defendant's daughter presents an interesting coincidence; in *Vale* it was the defendant's mother and brother who arrived at the house before the search had turned up the narcotics. Again we perceive no valid grounds for distinction.

The majority opinion, in fact, reads like a paraphrase of the *dissenting* opinion of Justice Black in *Vale* v. *Louisiana*. Justice Black sought to justify the search as a reasonable police action to prevent the removal or destruction of evidence by Vale's mother and brother, or by one of Vale's customers. The majority of the Supreme Court squarely rejected that argument: "[O]ur past decisions make clear that only 'in a few specifically established and well-delineated' situations may a warrantless search of a dwelling withstand constitutional scrutiny, even though the authorities have probable cause to conduct it. The burden rests on the State to show the existence of such an exceptional situation. . . . And the record before us discloses none. [Par.] There is no suggestion that anyone consented to the search. The officers were not responding to an emergency. They were not in hot pursuit of a fleeing felon. The goods ultimately seized were not in the process of destruction. Nor were they about to be removed from the

jurisdiction." (399 U.S. at pp. 34-35 [26 L.Ed.2d at pp. 413-414].) (Citations omitted.)

Applying this reasoning to the facts of the present case, we observe no evidence of consent, emergency, or hot pursuit. The evidence was not in the process of being removed or destroyed. And, by the necessary implication of the majority opinion in *Vale,* the *possibility* that relatives or confederates *might* remove the evidence is not one of those specifically established and well-delineated exceptions which justifies a warrantless search.

Finally, the majority opinion advances the distinction suggested by the Attorney General—that the search of a garage is a lesser intrusion on privacy than the search of a dwelling. It cites no cases, however, holding that a garage or other uninhabited building can be searched incident to an outdoor arrest.[2]

The cases, in fact, all condemn such searches of garages. In *People* v. *Hobbs* (1969) 274 Cal.App.2d 402 [79 Cal.Rptr. 281], a case antedating *Chimel,* police arrested defendant at his place of employment and then, without a warrant, searched the garage at his residence. The court held the search illegal, saying, "The threshold question presented by this appeal is whether the detached garage was within the protection of the Fourth Amendment to the United States Constitution and article I, section 19 of the California Constitution. We believe that it was. Traditionally, such protection has extended territorially not merely to the home itself, but also at least to the subsidiary outbuildings on the same lot. . . . In a highly automotive society, like that of southern California, a detached nearby family garage on the same lot as the family residence itself should be entitled to the same degree of constitutional protection of the privacy of its contents as the home itself enjoys. Moreover, such a garage is a place where the homeowner reasonably expects such privacy to obtain." (274 Cal. App.2d at pp. 405-406.)

In *People* v. *Landry* (1969) 276 Cal.App.2d 370 [80 Cal.Rptr. 880], defendant was arrested on a private road servicing his and other houses. Over an hour later the police searched both defendant's house and a detached storage shed. The court, applying pre-*Chimel* standards, held the search of the house *and the search of the shed* illegal. It stated: "The search of the house and shed was in violation of California law, well established at the time of the incident [i.e., before *Chimel*] . . . . The subsequent search

---

[2]The opinion does cite *People* v. *Rodriguez* (1965) 238 Cal.App.2d 682, 690 [48 Cal.Rptr. 117], which upheld the search of an apartment following an arrest on the walkway outside the building. The case is squarely contrary to *Vale* v. *Louisiana* and would appear to be overruled by the latter decision.

cannot be upheld on the ground that it was incident to the valid arrest of appellant. Appellant was arrested on the dirt road, not in the house or the shed which were later searched. The search was not limited to the premises where the arrest was made, nor was it contemporaneous with that arrest." (276 Cal.App.2d 370, 375-376). The court cites *Shipley* v. *California* (1969) 395 U.S. 818 [23 L.Ed.2d 732, 89 S.Ct. 2053], which held that " 'one's house cannot lawfully be searched without a search warrant, except as an incident to a lawful arrest *therein.*' " (395 U.S. at p. 820 [23 L.Ed.2d at p. 734].) (Italics in original.)

*People* v. *Superior Court* (*Arketa*) (1970) 10 Cal.App.3d 122 [89 Cal. Rptr. 316], involved the arrest of defendant in the rear yard of a residence, followed by the warrantless search of a shed 20 feet distant. The court held the search illegal, stating that "The legality of the search of the shed cannot be considered as one incidental to the arrest of a defendant some 20 feet away. (*Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 90 S.Ct. 2034].) Indeed, even prior to *Chimel* such a warrantless search would have been held illegal in this state." (10 Cal.App.3d at pp. 126-127.)

The majority opinion attempts to distinguish these cases: in *Hobbs* the arrest did not take place on the same premises as the search; in *Landry* it was not contemporaneous with the search; in *Arketa* the defendant did not have control over the shed searched. This tactic may distinguish the facts of these cases, but it does not diminish the clear reasoning and holding of the Courts of Appeal—that garages and other outbuildings connected with a residence lie within the scope of a reasonable expectation of privacy, enjoy the same constitutional protection as the residence itself, and cannot be searched except with a warrant or incident to an arrest therein.

The Attorney General does not dispute defendant's contention that defendant entertained a reasonable expectation of privacy as to the contents of the garage. The Attorney General instead proposes an innovation in the law of search and seizure, although it is rather late in the game for new developments in pre-*Chimel* law. He contends that one has a lesser expectation of privacy in his garage than in his house, and therefore—and here the argument becomes obscure—either (a) the police may search garages incident to arrests not in the immediate vicinity or (b) the phrase "immediate vicinity of the arrest" describes an oscillating circle whose radius expands or contracts depending upon the degree of a defendant's expectation of privacy as to the contents within the various structures the police might wish to search.[3]

---

[3]For example, the police could search houses within 10 feet of the place of arrest, garages within 100 feet, and doghouses within 500 feet.

Not surprisingly, the Attorney General cites no authority directly supporting his theory. He relies, instead, on the very general language of *United States* v. *Rabinowitz* (1950) 339 U.S. 56, 63 [94 L.Ed. 653, 659, 70 S.Ct. 430]: "What is a reasonable search is not to be determined by any fixed formula. The Constitution does not define what are 'unreasonable' searches and, regrettably, in our discipline we have no ready litmus-paper test. The recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case."

*Rabinowitz,* however, was not the only pre-*Chimel* case on the scope of reasonable search. Other cases made it clear that a search incident to an arrest must be confined to the *immediate* vicinity of the arrest and defined that term to exclude searches of buildings following exterior arrests. (E.g., *Shipley* v. *California* (1969) 395 U.S. 818, 819-820 [23 L.Ed.2d 732, 734, 89 S.Ct. 2053].) And we read both *Shipley* and *Vale* v. *Louisiana* as square holdings that in searching incident to an arrest, an officer may not lawfully search beyond the *immediate* vicinity as narrowly defined in those decisions simply because in the circumstances of that particular case such an extended search appears reasonable.

The validity of a warrantless search not confined to the immediate vicinity of the arrest is tested not by the reasonableness standard of *Rabinowitz,* but by whether it comes within a "few specifically established and well-delineated exceptions." (*Katz* v. *United States* (1967) 389 U.S. 347, 357 [19 L.Ed.2d 576, 585, 88 S.Ct. 507].) *Vale* v. *Louisiana* (1970) 399 U.S. 30, 35 [26 L.Ed.2d 409, 414, 90 S.Ct. 1969] lists those exceptions: consent, emergency, hot pursuit, goods in the process of destruction or about to be removed from the jurisdiction. "The burden rests on the State to show the existence of such an exceptional situation." (*Vale* v. *Louisiana,* 399 U.S. at p. 34 [26 L.Ed.2d at p. 413].) The Attorney General has not, and does not claim to have, met this burden.

The judgment of the superior court should be reversed.

Peters, J., and Sullivan, J., concurred.