[Crim. No. 26203. Second Dist., Div. Three. June 30, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH ROBERT BRUCE, Defendant and Appellant.

**COUNSEL**

Richard S. Buckley, Public Defender, Harold E. Shabo, John P. Torelli and Richard A. Curtis, Deputy Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, and Edward T. Fogel, Jr., Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**COBEY, Acting P. J.**—Kenneth Robert Bruce appeals from a judgment of conviction, entered upon a guilty plea following the denial of his motion to suppress certain items seized by the police at the time of his arrest and a statement he made thereafter.[1] The appeal lies. (Pen. Code, § 1538.5, subd. (m).)

Appellant contends that the trial court should have suppressed this evidence because the arresting officers acted without probable cause and

---

[1] A Penal Code section 1538.5 motion lies to suppress confessions and admissions obtained by the police as a result of an unlawful search or seizure. (Pen. Code, § 1538.5, subd. (a); *Lockridge* v. *Superior Court,* 3 Cal.3d 166, 169 [89 Cal.Rptr. 731, 474 P.2d 683], cert. den. 402 U.S. 910 [28 L.Ed.2d 652, 91 S.Ct. 1387].)

failed to comply with the knock and notice requirements of Penal Code section 844.

## FACTS

About a week prior to the events at issue here, Sergeant Fred Cram of the sheriff's department received a tip that someone was dismantling Volkswagens in a garage located at 4422 West Compton Boulevard in Lawndale. Deputy John Martin was dispatched to that location, but he observed nothing. The following night, Martin drove by to check the garage a second time, and again observed nothing. Regularly assigned patrol crews were also notified, but they, too, saw nothing unusual that week.

On January 14, 1974, Martin received an anonymous tip that someone was using a torch inside the garage to cut up a green Volkswagen. He, Cram, and several other deputies drove to the location. From the street, Martin immediately noticed that there were two horizontal slats missing from the main garage door, apparently near its bottom, and through the gap he was able to see the bottom part of a vehicle. He also saw irregular flashes of light inside the garage and a small amount of smoke coming out the door.

Cram positioned himself in front of the main garage door along with one of the deputies, while Martin and the remaining deputies covered the side door. Cram opened the garage door, saw appellant inside, and ordered him to "stop." Cram also observed two Volkswagens inside the garage, one of which was still smoldering. Cram concluded that they were probably stolen vehicles in the process of being dismantled. Meanwhile, appellant's cohort had attempted to escape via the side door. He was immediately captured.

Martin then entered the garage and checked the transaxle housings of the two vehicles to obtain their identification numbers. On the first vehicle, he discovered a freshly cut hole where the stamped number would normally be. He reached inside the housing and retrieved it. It still was extremely hot. He discovered a similar hole on the second vehicle, together with the partial remains of the identification number. He found the trunk compartment identification number on the floor at the rear of the garage.

Deputy Martin subsequently verified that both vehicles had, in fact, been stolen. The record is silent as to whether either appellant or his cohort lived in the residence on the premises where they were arrested.[2]

## DISCUSSION

Appellant contends that the trial court should have suppressed the evidence because the arresting officers acted without probable cause and failed to comply with the knock and notice requirements of Penal Code section 844. Because we agree generally with the latter half of appellant's contention, we need not decide whether the officers acted with probable cause.

### *Applicability of Knock and Notice Requirements*

■ The threshold question is whether the knock and notice requirements apply to an entry[3] into a detached garage located on a residential premises, such as the one involved here.[4] The only reported case on this subject assumed the requirements *are* applicable to outbuildings of this type. (*People* v. *Superior Court (Arketa),* 10 Cal.App.3d 122, 125, 127 [89 Cal.Rptr. 316].)[5] Nevertheless, the Attorney General invites our attention to the language of this section—which refers only to houses[6]—and he suggests that the *Arketa* court was, therefore, wrong in its assumption.[7] The Attorney General further suggests that: (a) none of the purposes and policies underlying the knock

[2]In any event, the deputies apparently made no attempt to determine the true state of affairs before they entered the garage.

[3]While the decision to arrest appellant was not made until sometime after the entry, the knock and notice requirements embodied in section 844 also apply, as a matter of policy, when entry is sought merely to investigate possible criminal activity. (*People* v. *King,* 5 Cal.3d 458, 464, fn. 3 [96 Cal.Rptr. 464, 487 P.2d 1032].)

[4]The premises contained a small residence, located approximately four feet off the street. A 40-foot long driveway to the east of the residence led to the garage where the stolen vehicles were located. Some 25 to 30 feet separated the two structures. The side door of the garage, mentioned earlier in the opinion, opened on the back yard. There was no gate across the driveway.

[5]The structure involved in *Arketa* was a wooden shed located approximately 25 yards from the rear porch of the main residence. (10 Cal.App.3d at p. 122.)

[6]Section 844 reads as follows: "To make an arrest, . . . a peace-officer . . . may break open the door or window of the *house* in which the person to be arrested is . . . after having demanded admittance and explained the purpose for which admittance is desired." (Italics added.)

[7]The Attorney General also attempts to distinguish *Arketa,* on the ground that it involved an arrest which occurred outside of the outbuilding which the officers unlawfully entered. The purported distinction is of no help to the Attorney General. If anything, it makes this an *a fortiori* case.

and notice requirements are applicable to garages and outbuildings; and (b) the expectation of privacy associated with structures of this type is significantly less than that associated with the main residence. (*People* v. *Medina,* 7 Cal.3d 30, 40 [101 Cal.Rptr. 521, 496 P.2d 433].)

We disagree. To begin with, we recognize, as our Supreme Court did in *Medina,* that an intrusion into a garage located upon residential premises is less significant an intrusion than one into the main residence. *(Id.)* But our Supreme Court also recognized in *Medina* that garages so located are protected by the Fourth Amendment. *(Id.)* We, therefore, see no reason to retreat from our basic position in *People* v. *Hobbs,* 274 Cal.App.2d 402, 406 [79 Cal.Rptr. 281], that a householder generally has a substantial expectation of privacy associated with his garage.[8]

Second, we believe the purposes and policies underlying the knock and notice requirements are fully applicable to the entry now before us. ■ Those purposes and policies are: (a) to protect individual privacy; (b) to protect innocent persons who may also be present on the premises; (c) to avoid situations conducive to violent confrontations between householders and individuals who enter without proper notice; and (d) to protect peace officers who otherwise might be injured during such confrontations. (*Duke* v. *Superior Court,* 1 Cal.3d 314, 321 [82 Cal.Rptr. 348, 461 P.2d 628].) ■ True, the householder, or his invitee, startled inside a garage may be somewhat less inclined to react violently than he would be if startled inside the living quarters. Nevertheless, the potential for needless violent confrontation is not confined to the residence, and the burden of complying with the knock and notice requirements is slight. For this reason, we believe that the purposes and policies identified in *Duke* would, on balance, be better served by extending those requirements to the situation before us.

Third, we believe the Attorney General's argument places entirely too much emphasis on the Legislature's use of the word "house" in section

---

[8]This is particularly true where, as here, the garage door was shut and the interior was only partially revealed to the outside world. In marked contrast, the garage in *Medina* was "open" and the storage area inside was "clearly visible." (7 Cal.3d at p. 35.)

The fact that activity within the garage could be observed to a very limited extent from the street, through the opening in the front door of the garage created by the absence of two horizontal slats, did not dispel the reasonableness of the occupants' expectation of privacy therein. (Cf. *Lorenzana* v. *Superior Court,* 9 Cal.3d 626, 636-637 [108 Cal.Rptr. 585, 511 P.2d 33].) The further fact that the occupants of the garage may not themselves have resided on the premises is without legal consequence in this respect. (See *Jacobs* v. *Superior Court,* 36 Cal.App.3d 489, 495 [111 Cal.Rptr. 449].)

844.[9] Our Supreme Court has deemed the rights protected by this section "fundamental rights,"[10] has described the requirement of prior notice of authority and purpose as a requirement " 'deeply rooted in our heritage,' " and has further admonished us that it " 'should not be given grudging application.' " (*People* v. *Rosales,* 68 Cal.2d 299, 304 [66 Cal.Rptr. 1, 437 P.2d 489].)[11] This section, moreover, was intended by the Legislature to codify the common law. (*People* v. *Maddox,* 46 Cal.2d 301, 306 [294 P.2d 6].) Its scope must, therefore, be determined with reference to that law,[12] as well as to the specific words of the enactment. (*Id.;* *Baker* v. *Baker,* 13 Cal. 87, 95.)

Finally; we note that federal courts interpreting a similar statute (18 U.S.C. § 3109) have held that the term "house" includes outbuildings located within the curtilage. (*United States* v. *Mullin* (4th Cir. 1964) 329 F.2d 295, 298-299 [small smokehouse located 75 feet from main residence; knock and notice statute applicable]; *Fields* v. *United States* (5th Cir. 1966) 355 F.2d 543, cert. dism., 384 U.S. 935 [16 L.Ed.2d 536, 86 S.Ct. 1452] [commercial chicken house outside curtilage; statute inapplicable].)

Admittedly, there would appear to be some doubt as to whether this territorial concept of the curtilage, which originally referred to the land and buildings within the shelter of a baron's stone walls, has substantial

---

[9]In this connection, we note that the Fourth Amendment itself refers only to "houses, papers, and effects," and yet has been held to include garages within the scope of its protection. (*Medina, supra,* 7 Cal.3d at p. 40.) Among the garages so included are commercial premises. (*People* v. *Ramsey,* 272 Cal.App.2d 302, 309 [77 Cal.Rptr. 249].)

[10]To some extent at least, the common law rule of announcement, recognized as early as *Semayne's Case* (K.B. 1603) 77 Eng.Rep. 194, has been made binding upon the states under the Fourth and Fourteenth Amendments. (*Ker* v. *California* (1963) 374 U.S. 23, 37-41, 47 [10 L.Ed.2d 726, 740-742, 746, 83 S.Ct. 1623]; *United States* v. *Bustamante-Gamez* (9th Cir. 1973) 488 F.2d 4, 9; see generally Blakey, *The Rule of Announcement and Unlawful Entry: Miller v. United States and Ker v. California* (1964) 112 U.Pa.L. Rev. 499; Comment, *Announcement in Police Entries* (1970) 80 Yale L.J. 139). It can be argued that it is also included within the requirements of article I, section 13, of the California Constitution.

[11]This undoubtedly explains why not a single dissenting voice was heard when the court extended the knock and notice requirements to entries for the purpose of investigation as well as arrest. (*People* v. *King, supra,* 5 Cal.3d at p. 464, fn. 3.)

[12]Some 60 years after *Semayne's Case* was decided, the same court declared that the rule of announcement does not extend to a barn, "there being no particular place where the sheriff may make demand, . . . but contra if the barn . . . appeared to be parcel of a mansion-house. . . ." (*Penton* v. *Brown* (K.B. 1664) 83 Eng.Rep. 1193, 1193.) Early decisions in this country interpreted *Penton* v. *Brown* as distinguishing between outbuildings located within the curtilage and those located in open fields. (*Haggerty* v. *Wilber* (NY Super. Ct. 1819) 16 Johns R. 287, 288; *Burton* v. *Wilkinson* (1846) 18 Vt. 186, 189 (dictum).)

relevance to the housing conditions of modern life. (*People* v. *Ramsey, supra,* 272 Cal.App.2d at p. 308.) We also recognize that "the Fourth Amendment protects people, not places." (*Katz* v. *United States* (1967) 389 U.S. 347, 351 [19 L.Ed.2d 576, 582, 88 S.Ct. 507].) Nevertheless, the rationale for extending the knock and notice requirements beyond the residence does not involve a mechanical application of the curtilage concept. Instead, the following rationale, stated in *Mullin,* has been relied on: "We are not unmindful of the fact that § 3109 speaks of 'house' and we are here concerned with an unannounced entry into an outbuilding, separate and distinct from Perry's residence. However, we are unwilling to construe narrowly a statute which embodies a traditional right which is deeply imbedded in Anglo-American Law." (329 F.2d at p. 299.)

We, therefore, give an affirmative answer to the threshold question we posed, and hold that the knock and notice requirements are fully applicable to an entry by a peace officer into a detached garage located on occupied residential property to investigate possible criminal activity occurring therein.

The Attorney General also argues that section 844 is inapplicable because the officers had reason to believe the premises were abandoned and were being used by trespassers for illegal purposes. (*People* v. *Medina,* 265 Cal.App.2d 703, 708 [71 Cal.Rptr. 586].) There is no merit in this argument. In *Medina,* the indicia of abandonment were plentiful. Most of the neighborhood had been abandoned to make way for a freeway project; the residence in question had a "For Sale" sign and the front lawn was eight inches high. (*Id.,* at p. 705.) There were no such indicia present here.[13]

*Compliance Not Excused*

The Attorney General next contends that compliance with the knock and notice requirements was, in any event, excused. We find no merit in this contention.

---

[13]The Attorney General's brief states: "[O]fficers had periodically patrolled the location in question during the course of a week's time without observing any sign of lights, habitation or activity at all in the house or garage." The record does not support this broad a statement. Apparently, no suspicious activity was observed, but there is no testimony to the effect that the premises were deserted during the entire week.

In any event, after the deputies had arrested appellant, they learned that someone was, in fact, living in the residence on the premises. This, we think, amply illustrates why the abandoned premises exception should not be extended on the basis of circumstances like these.

The Attorney General first points to the attempted escape by appellant's cohort and suggests that it gave the officers reason to believe that compliance might frustrate their efforts to make an arrest. We disagree. Seven peace officers were present at the scene, and the only two avenues of escape were well covered. Moreover, the escape attempt apparently occurred when Sergeant Cram opened the main garage door,· not beforehand.

The Attorney General also points to the attempted destruction of the vehicle identification numbers and suggests that compliance might well have resulted in the loss of all evidence of ownership. This concern is a real one. Nevertheless, even in narcotics cases where evidence can be destroyed far more easily than here, we require some specific indication that destruction is about to occur before we excuse compliance with the knock and notice requirements. (See *People* v. *DeSantiago,* 71 Cal.2d 18, 28-29 [76 Cal.Rptr. 809, 453 P.2d 353]; *People* v. *Gastelo,* 67 Cal.2d 586, 588 [63 Cal.Rptr. 10, 432 P.2d 706].) There was no such specific indication in this case.[14]

Finally, the Attorney General points to the contemporaneous felony exception (*People* v. *Sotelo,* 18 Cal.App.3d 9, 18-19 [95 Cal.Rptr. 486]) and suggests that it is applicable. Assuming the Attorney General is correct, this exception excused compliance only with the explanation of purpose requirement. The officers were still required to identify themselves and demand admittance. (See *People* v. *Hill,* 12 Cal.3d 731, 758 [117 Cal.Rptr. 393, 528 P.2d 1]; *People* v. *Cockrell,* 63 Cal.2d 659, 665-666 [47 Cal.Rptr. 788, 408 P.2d 116].) They failed to do this.

## CONCLUSION

Thus, we conclude that the deputies' manner of entry was unlawful, and the trial court should have suppressed the evidence seized inside the garage and all fruits thereof. Under *People* v. *Hill, supra,* 12 Cal.3d at pp. 768-769, the trial court's failure to do so cannot be deemed harmless error.

---

[14]The Attorney General points to the deputies' observation that acetylene torches were being used inside the garage. This no more qualifies than the sound of a flushing toilet would in a narcotics case when there was no indication that it occurred in response to the deputies' approach. Of course, if the occupants of the garage had failed to respond promptly to a demand for admittance and continued to use their torches, this might well have been interpreted as a specific indication that destruction of evidence was taking place. But no such demand was ever made. ·

## DISPOSITION

The judgment is reversed.

Allport, J., and Potter, J., concurred.