[Crim. No. 3544.   Fourth Dist., Div. One.   May 22, 1969.]

THE PEOPLE Plaintiff and Respondent, v. JAMES HENRY CLAY, Defendant and Appellant.

Sidney Lester and George H. Chula for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jimmie E. Tinsley, Deputy Attorney General, for Plaintiff and Respondent.

AULT, J. pro tem.*—James Henry Clay appeals his conviction, after court trial, of maintaining a place for the purpose

---

*Assigned by the Chairman of the Judicial Council.

of selling, giving away or using marijuana (Health & Saf. Code, § 11557), possessing marijuana (Health & Saf. Code, § 11530), and possessing marijuana for sale (Health & Saf. Code, § 11530.5).

Federal Undercover Narcotics Agent Lusardi went to a house leased by Clay for the purpose of negotiating a purchase of hashish, a marijuana derivative. He entered the house at 1 p.m., December 14, 1967, saw Clay in the living room with several other people and noticed a strong odor of burning marijuana. Lusardi spoke with a man named Amaranthus who said he belonged to the Universal Life Church which dealt with the use and sale of marijuana and psychedelic drugs. They discussed the price and arrangements for delivery of five pounds of hashish. Amaranthus agreed to sell the narcotic for $5,500 but insisted Lusardi sign a card which contained statements he was not a police officer, an informant, a member of an investigative branch of any government and a number of other similar statements. Lusardi signed the card and left the residence. He returned shortly before 3 p.m. the same day, entered the rear of the house and walked into a bedroom where Amaranthus and one Tunnel showed him five glassine bags containing approximtely five pounds of hashish. Lusardi examined the merchandise, said the money was in his car and walked out to get it.

At his car, Lusardi told another agent the hashish was in the house. The other agent passed the word on to a number of other officers who were staked out in the vicinity. Approximately 14 agents and officers from the Federal Bureau of Narcotics, the Orange County sheriff's department and the district attorney's investigator's office converged on the house.

When Lusardi and two of the other agents approached to within five feet of the house Lusardi heard loud voices and running inside the house; someone yelling ''It's the police! It's the police!''; and the sound of a shot being fired. Lusardi and the agents entered the house without knocking, announcing they were police or stating their purpose.

Inside the house, the agents and officers found the five pounds of bulk hashish, two smaller packets of marijuana in the living room, a half pound quantity of marijuana in a garage or shed attached to the house, traces of small pieces of hashish in a bedroom, marijuana debris and several marijuana cigarette butts on the living room rug and two smoking pipes which smelled of marijuana in the living room. The house smelled of burning marijuana or hashish at the time of the raid.

All the occupants of the house, including Clay who was in the living room, were arrested and given a *Miranda* warning. The officers found incense holders, psychedelic pictures and literature on mysticism, marijuana and LSD in the house and garage. It appeared some type of seance or group gathering had been held in the garage on a regular basis. The officers also found a number of cards similar to the one Lusardi was required to sign before he would be allowed to buy hashish.

The police searched Clay's clothing and found marijuana debris in his right coat pocket.

The court denied a Penal Code section 1538.5 motion by Clay to suppress the marijuana evidence. Clay contends the officers were not justified in entering the house at 3 p.m. without a search or arrest warrant and without knocking, announcing who they were and stating their purpose as required by Penal Code section 844. Noncompliance with section 844 may be excused when an officer acts on a reasonable and good faith belief compliance would increase his peril, frustrate an arrest, or permit the destruction of evidence. (*People* v. *Rosales,* 68 Cal.2d 299, 305 [66 Cal.Rptr. 1, 437 P.2d 489] ; see also *People* v. *Gastelo,* 67 Cal.2d 586, 588 [63 Cal.Rptr. 10, 432 P.2d 706] ; *People* v. *De Santiago,* 71 Cal.2d 18, 19 [76 Cal.Rptr. 809, 453 P.2d 353].) Such is the case here, where Lusardi heard loud voices, running about, a shout "It's the police! It's the police!" and a shot being fired. The officers could reasonably believe, because of the fired shot, compliance with section 844 would increase their peril and those who were running and shouting inside were either trying to escape or destroy evidence.

Clay claims the evidence was insufficient to convict him of any of the three charges upon which he was tried. Evidence he was the lessee of and in the house when a sale of hashish was negotiated, narcotics were scattered throughout the premises, marijuana smoke was smelled and used marijuana smoking apparatus was present supports the conviction of maintaining the house as a place for selling, giving away or using marijuana. It has been held a single isolated instance of the forbidden conduct will not support a finding of maintaining a place for sale, giving away or using a narcotic. (*People* v. *Horn,* 187 Cal.App.2d 68, 72 [9 Cal.Rptr. 578] ; *People* v. *Holland,* 158 Cal.App.2d 583, 588-589 [322 P.2d 983].) Here, however, the circumstances surrounding the sale, the seller's statement the Universal Life Church dealt with the use and sale of marijuana, the requirement a buyer

sign a card stating he was not police-connected and the strong odor of burning marijuana both at 1 p.m. and again at 3 p.m. support the finding there was a continuity of purpose both for sale and for use of narcotics.

■ Clay's conviction of possessing marijuana is supported by the evidence he had possession and control of premises which contained a large quantity of marijuana and hashish and he was present in a room which smelled strongly of marijuana smoke and in which there was marijuana smoking paraphernalia and usable quantities of marijuana in plain sight as well as scattered marijuana debris. ■ Exclusive possession is not required. (*People* v. *McGlory,* 226 Cal.App.2d 762, 766 [38 Cal.Rptr. 373].) ■ Clay's knowledge of the narcotic character of marijuana was sufficiently established by the presence of marijuana debris in his pocket and the large quantity of marijuana concealed in his garage and under the rug in his house. (*People* v. *Von Latta,* 258 Cal.App.2d 329, 334 [65 Cal.Rptr. 651].)

■ Clay's contention it was not shown the contraband found in the house was marijuana is without merit. Trained narcotics officers testified, without objection, the substances found were marijuana and hashish. The case was submitted on the preliminary transcript. Before submitting the case the deputy district attorney and defense counsel stipulated:

[DEPUTY DISTRICT ATTORNEY] "I believe at the preliminary hearing it was stipulated that the substances described therein were marijuana. These substances were marijuana only for the purpose of the preliminary hearing and we would request the stipulation be entered to the effect that the substances described as marijuana also be so described in Superior Court before his Honor in addition to the testimony present in the preliminary transcript.

"MR. LESTER: [Defense counsel] So stipulated."

■ Clay's conviction of possessing marijuana for sale is supported by the above evidence of possession together with evidence a sale of hashish was negotiated in his rented house, a half pound bag of bulk marijuana was found in the garage and two smaller packages, one containing an ounce of marijuana, were found in the living room. The quantity of marijuana and manner of packaging it support an inference it was possessed for purposes of sale, rather than for Clay's personal use. (See *People* v. *Robbins,* 225 Cal.App.2d 177, 184 [37 Cal. Rptr. 244].)

■ ■ Clay's convictions of both possessing marijuana

and possessing marijuana for sale cannot stand because possessing marijuana is an offense necessarily included in the crime of possessing marijuana for sale. (Cf. *People* v. *Rosales,* 226 Cal.App.2d 588, 592 [38 Cal.Rptr. 329], holding possessing narcotics is a necessarily included offense in the offense of selling narcotics.)

*People* v. *Pater,* 267 Cal.App.2d 921, 926 [73 Cal. Rptr. 823] holds: "When a multiple punishment is involved under facts which *do not* encompass necessarily included offenses a *conviction* may stand although the *punishment* must be expunged. [Citation.] But, . . . when a necessarily included offense is involved, the *conviction also must be reversed.*" (Accord: *People* v. *Toliver,* 270 Cal.App.2d 492, 498 [75 Cal.Rptr. 819].)

The Attorney General contends Clay could have been convicted of simple possession of the smaller quantities of marijuana and of possession for sale as to the larger quantities. The prosecution made no attempt to draw this distinction at the trial. This is not a case involving multiple acts of possession separated by time or space. (Compare: *People* v. *Von Latta, supra,* 258 Cal.App.2d 329, 339-341.) The inferences Clay possessed marijuana and he did so for purposes of selling it are based upon the same set of circumstances, i.e., Clay's presence in the marijuana-smoke-filled room of a house leased to him in which various quantities of marijuana and narcotic paraphernalia were found and in which others had negotiated a narcotic sale. Clay's connection with the charges was the act of occupying the house together with his status as lessee. We cannot fragment Clay's involvement into separate and distinct acts or transactions. Clay's possession of marijuana was a part of the greater offense of possession for sale in fact and in law. (See *People* v. *Francis,* 71 Cal.2d 66, 72-74 [75 Cal.Rptr. 199, 450 P.2d 591].)

The judgment is reversed as to count II (possession of marijuana) and the trial court is directed to set aside the sentence as to that count and dismiss it. In all other respects the judgment is affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 17, 1969. Peters, J., was of the opinion that the petition should be granted.