STATE of Missouri, Respondent,

v.

Donat Phillip PISHA, Appellant.

No. WD 34946.

Missouri Court of Appeals, Western District.

June 5, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied July 31, 1984.

Joseph H. Locascio, Sp. Public Defender, John M. Torrence, Asst. Sp. Public Defender, Kansas City, for appellant.

John Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, C.J., and SHANGLER and NUGENT, JJ.

TURNAGE, Chief Judge.

Donat Pisha was found guilty by a jury of burglary in the first degree, and of armed criminal action by committing the felony of sexual abuse in the first degree through the use and aid of a dangerous instrument.

Pursuant to the jury's verdict the court imposed punishment at 5 years imprisonment for the burglary and 9 years for the armed criminal action with the two terms to run concurrently, but consecutively to a previously imposed 12 year sentence. Pisha contends the court erred: (1) in refusing to allow him to file a notice out of time of a defense of mental disease or defect; (2) in refusing to order a psychiatric examination; (3) in refusing a continuance; and (4) in instructing that the weapon carried by Pisha was a dangerous instrument. Affirmed.

In the early morning hours of September 11, 1981, a woman in Independence asleep on her front room couch was awakened by a man running his hand over her body. The man wore a ski mask and she was unable to recognize him. As the woman awakened, she screamed. She testified that the man then held a cold, heavy, blunt

object to her temple and told her to be quiet. She stated that the object placed at her temple was round and that there was no doubt in her mind it was a gun. Shortly after the woman was awakened, one of her children woke up and started into the living room, whereupon the man fled through the front door.

Not long after the man had fled, the police arrested Pisha lying in a field a few blocks from the house. A car registered to Pisha was found about a block from the house.

After receiving the required warnings, Pisha made a statement in which he admitted entering the house and fondling the woman. In his statement Pisha said that he carried a BB pellet pistol which he described as a pistol type with a hand cock under the barrel.

Pisha led the officers to the point where he had discarded the ski mask and also to the point where he said he had discarded the pistol. The ski mask was found, but the pistol was never located.

Pisha was arraigned on October 22, 1981. On January 21, 1982, counsel filed a notice of intent to rely on the defense of mental disease or defect and a motion for a psychiatric examination. The state objected to both motions and the court held a hearing on all motions on January 28 prior to the trial which commenced on February 3. Counsel stated at the hearing that the motions had not been filed previously because of plea bargaining negotiations. Counsel stated that it was not until after those negotiations broke down, just a few days before the motions were filed, that Pisha told him that he had had mental problems several years earlier. The previous difficulty occurred in 1964 when Pisha and his wife were seen at Missouri Western Mental Health Center following his wife's suicide attempt. In 1967 Pisha himself attempted suicide but did not receive any psychiatric treatment.

The motion for leave to file notice to rely upon a defense of mental disease or defect did not state any cause for failure to file the motion at the time of the arraignment or within 10 days thereafter as required by § 552.030.2, RSMO 1978.[1] The motion for mental examination was filed pursuant to § 552.020.2.

Pisha testified at the motion hearing that there were things going on in his mind that he did not have control over and that he did not understand why he had gone into the house and fondled the woman. He told the court that he had undergone a mental examination in connection with a rape charge in Benton County on which he was sentenced on October 8, 1981 and the psychiatrist had told him that he was not crazy. Pisha stated that he replied that he knew that he was not crazy because he had been managing 5 children for the last 4 years since his wife died.

At the conclusion of the hearing the court stated that it had observed and listened to Pisha and it was abundantly clear to the court that Pisha understood the proceedings and the charges against him and that he was able to assist his counsel. The court stated that it entertained no doubt that Pisha was competent to proceed.

After the court denied leave to file the late notice of intent to rely on the defense of mental disease or defect and did not grant the motion for a mental examination, counsel requested a continuance for the purpose of obtaining a psychiatric examination. The court denied this request.

■ The first claim of error relates of the failure of the court to allow the late filing of the notice to rely on the mental disease or defect defense. Section 552.-030.2 requires that the notice that a person will rely on this defense be filed at the time the plea is entered, within 10 days after a plea of not guilty or at such later date as the court may permit for good cause shown. In *State v. Holmes*, 439 S.W.2d 518, 520[2–4] (Mo.1969), the court held that § 552.030.2 confers considerable discretion on the trial judge in passing upon a request to file the notice beyond the time allowed.

1. All sectional references are to Missouri's Re- vised Statutes, 1978, unless otherwise indicated.

In this case there is no showing of good cause for filing the notice beyond the time stated in the statute. The motion which was filed made no reference to any cause for its late filing. The evidence adduced at the hearing revealed that Pisha had undergone a mental examination within a short time prior to his arraignment and the entry of his plea of not guilty. Pisha stated the physician who had examined him indicated that he was not crazy. The court was justified in believing that examination had not revealed any mental disease or defect or the results of that examination would certainly have been provided to the court. Indeed, Pisha's own description of the result of that examination leads to the conclusion that nothing of significance was found. Pisha was aware of the mental examination which he had recently undergone and of his contact with professionals in the mental health field some 17 years before. Pisha's awareness and his failure to tell his attorney until a few days before January 21, 1982 about a possible mental defense cause this court to hold that the court did not abuse its discretion in denying the request. The court was justified in following the admonition in *Holmes*, supra at 520–21, that when the facts upon which a person relies in an untimely effort to rely on a mental disease defense were known at the time the statute requires the notice to be filed, the court is justified in regarding a subsequent application with skepticism. No abuse of discretion is shown in refusing to allow the notice to be filed out of time.

■ Pisha contends the court should have granted a mental examination pursuant to his application under § 552.020.2. The application under this section is not limited to a particular time but is to be granted whenever the judge has reasonable cause to believe that the accused has a mental disease or defect excluding fitness to proceed. At the hearing on the motion, counsel for Pisha explained that he did not believe that Pisha was incompetent to proceed with the trial or to assist his counsel. The main thrust of the hearing was to obtain leave to file a late notice that Pisha was going to rely on the defense of a mental disease or defect which existed at the time of offense. Nevertheless, it is now contended that the court erred in refusing to order an examination as to Pisha's competence to proceed. In *State v. Lowe*, 442 S.W.2d 525, 530 (Mo.1969), the court held that an examination is required only when there is good cause to believe that the accused has a mental disease or defect excluding fitness to proceed. The court further held that the trial court has discretion in whether or not to order a mental examination. As in *Lowe*, the trial court here observed Pisha and heard him testify. The court stated that as a result of its observation of Pisha and after hearing him testify there was no doubt that Pisha was competent to proceed. The court's observation of Pisha, counsel's statement that he had no question about Pisha's ability to proceed, and evidence that Pisha had been examined shortly prior to the hearing lead this court to the conclusion that the trial court did not abuse its discretion in refusing to order a psychiatric examination.

■ Pisha further contends that the court erred in refusing to grant him a continuance so that he could obtain an examination on his own. This motion was directed to the sound discretion of the trial court. *State v. Berger*, 618 S.W.2d 215, 217[1–3] (Mo.App.1981). For the reasons that the court did not abuse its discretion in denying the other motions, and because this case had been pending for 90 days with no request for a mental examination, the court did not abuse its discretion in refusing the continuance.

■ Finally, Pisha contends there was no evidence to support an instruction which allowed the jury to find that Pisha was guilty of armed criminal action by, with, or through the use, assistance, or aid of a dangerous instrument. Pisha contends that he carried a BB pistol and that this could not be a dangerous instrument. Section 556.061(7) defines "dangerous instrument" as any instrument, article or substance, which, under the circumstances in

which it is used, is readily capable of causing death or other serious physical injury. Pisha contends that under this definition a BB pistol could not be a dangerous instrument and, thus, the instruction was without support in the evidence. In reviewing the evidence this court must view the evidence in the light most favorable to the state and give the state the benefit of all reasonable inferences. *State v. Tilley*, 569 S.W.2d 346, 348[1] (Mo.App.1978). Viewed in that light, the jury could have inferred from the woman's testimony that Pisha held a pistol to her temple. The woman stated the object was hard, blunt, and circular and there was no doubt in her mind it was a gun. The jury was not bound by Pisha's statement that he had a BB pistol rather than a pistol which fired live ammunition. In short, there was evidence from which the jury could find that a pistol of a regular type, not a BB pistol, was placed against the woman's head. For that reason it is not necessary to engage in a discussion of whether or not a BB pistol qualifies as a dangerous instrument. As stated in *State v. Long*, 532 S.W.2d 814, 820 (Mo.App. 1975), "[a] gun in and of itself is considered a dangerous and deadly weapon whether it is, in fact, operative as a firearm or not." Since there was evidence from which the jury could have found that a gun was placed at the woman's head, the state was not required to prove that the gun was loaded or operative. The fact that the evidence would allow the reasonable inference that a gun was placed to her head was proof that the crime was committed with the aid of a dangerous instrument.

The judgment is affirmed.

All concur.