**STATE of Missouri, Plaintiff–Respondent,**

v.

**Robert J. MAHER, Defendant–Appellant.**

**No. 52752.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 15, 1987.

Motion for Rehearing and/or
Transfer Denied Jan. 20, 1988.

Holly G. Simons, Asst. Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Scott Templeton, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KAROHL, Presiding Judge.

Robert Maher was found guilty by a jury of five counts of robbery first degree, Section 569.020 RSMo 1986, two counts of armed criminal action, Section 571.015 RSMo 1986, and one count of tampering in the first degree, Section 569.080 RSMo 1986. Adopting the jury's assessment of punishment the court sentenced defendant to serve ten, fifteen, ten, ten and ten years on the robbery first degree counts and three years on each of the armed criminal action counts. These sentences were consecutive to each other for a total of sixty-one years. Defendant appeals only from the convictions of armed criminal action, Counts III and VII. He argues he was entitled to judgments of acquittal on these counts because the state failed to prove the article held by defendant during the robberies was a real gun. We affirm.

Since defendant challenges the sufficiency of the evidence pertaining to the charges of armed criminal action, a review of the facts is necessary. The testimony at trial involved questions regarding the activities of two men, one black and one white, who were the co-participants in two separate incidents of robbery on October 24, 1985. This trial involved charges pertaining to both incidents. For our purposes the white man is identified as defendant and the black man as Derrick Hutchinson.

On October 24, 1985 at about 7:30 p.m., Christine Messina and Richard LeGrand went to downtown St. Louis for the purpose of watching the Cardinals' World Series game at the Clarion Hotel. They went to the back door of the hotel to get into the lounge but the door was locked. As they began walking towards the front of the hotel, Richard felt a gun to his back and the two were informed they were being robbed. They turned around, saw Hutchinson and defendant, and noticed that defendant held a gun. They were pushed into a corner of the building and instructed to give up all of their money. Hutchinson took sixty-eight dollars from Richard and took Christine's purse and rummaged through it. Finding only change, he began searching Christine and stuck his hand down her shirt and rubbed her legs. Richard tried to step in and was punched by Hutchinson. Defendant shoved the gun into Richard's stomach. Thereafter, at defendant's suggestion, the two robbers fled the scene. Christine and Richard summoned the police and reported the crime.

Subsequent to this robbery, at about 8:30 p.m., Pat Lada, her sister Sue Parres and her brother-in-law Mark Parres went to downtown St. Louis to partake in the World Series celebrations. They parked their car in the parking garage outside of Busch Stadium. They left the car and walked out of the garage but returned after Pat and Sue decided to put their purses in the trunk of the car. Hutchinson and defendant approached and asked them for change. The defendant pulled out a gun and Hutchinson announced that it was a robbery. Hutchinson then took all of the money held by each victim: Pat had twenty six dollars; Sue had five dollars and fifty-cents; and Mark had one hundred eighty dollars. One of the men then demanded that Pat give up the keys to the car and when she did, the two robbers got into the car and drove up the ramp of the parking garage. Sue reported the events to a police officer. While so doing she saw the robbers leaving the garage. Hutchinson was arrested on the spot. Defendant fled, but was chased and captured. The money was recovered while still in discrete units. No gun was found in the area. Pat, Sue and Mark also identified defendant and Derrick Hutchinson as the men who robbed them. Because of the similarity of the crimes the victims of the earlier robberies, Christine and Richard, were summoned to a line up that same evening where they identified Derrick Hutchinson and defendant.

Section 571.015 RSMo 1986, in part, describes an offender of the armed criminal

action statute as "any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a *dangerous instrument*[1] or *deadly weapon*[2] ...." Defendant maintains that the evidence produced by the state was insufficient to support a conviction of armed criminal action in that it was not shown beyond a reasonable doubt that appellant committed the felonies of first degree robbery with the use of any instrument capable of causing death or serious physical injury. It is defendant's position he should have been acquitted of these charges because none of the five victims were able to state with certainty that the article held by appellant was a real gun. They all testified defendant had a gun. His argument depends upon the proposition that on the present facts a "real gun" must be proven.

In reviewing the sufficiency of the evidence required to sustain a criminal conviction, this court must accept as true all direct and circumstantial evidence and all reasonable inferences which are most favorable to the state and disregard the evidence and inferences contrary to a finding of guilt. *State v. Sherrill,* 657 S.W.2d 731, 737 (Mo.App.1983). Our focus is limited to whether the evidence was sufficient to build a submissible case and whether there was sufficient evidence from which reasonable individuals could find defendant guilty. *State v. Williams,* 652 S.W.2d 226, 227 (Mo.App.1983).

Within this scope of review, the jury could have concluded from each victim's testimony that defendant held a real gun. None of the five victims were familiar enough with weapons to identify whether the article displayed by defendant was a real gun. However, each specifically testified that defendant displayed a gun throughout the robberies, that each thought the gun was real, and that because of their fear of the gun each gave all their money to the robbers. The victims all described the gun as dark with a long, thin barrel.[3] Defendant did not testify. However, defendant's counsel used a toy CO–2 gun to cross-examine the witnesses. All said the robber's gun looked like a real gun and none identified the toy as the gun they saw in the hands of the robber. It is defendant's position that solely because none of the victims could state with absolute certainty that defendant had used a "real gun" then it was just as likely that defendant displayed only a harmless toy gun.

We find this issue to be not unlike those presented in *State v. Tilley,* 569 S.W.2d 346 (Mo.App.1978), and *State v. Pisha,* 674 S.W.2d 594 (Mo.App.1984). In *Tilley* the victim of a robbery presented conflicting testimony whether the gun used could have been a replica. In finding that a submissible case of armed criminal action was nevertheless made, the court held that "[a] gun in and of itself is considered a dangerous and deadly weapon whether it is, in fact operative as a firearm or not." *Tilley,* 569 S.W.2d at 348. The *Tilley* court further stated that "to require as a condition precedent to a conviction for armed criminal action that the state prove that a gun was loaded and operative would render the statute unenforceable." *Id.* Similarly, in *Pisha,* the victim of a sexual abuse testified that the object placed against her head was "hard, blunt and circular and there was no doubt in her mind it was a gun." 674 S.W.2d at 598. Defendant claimed that he used only a BB pistol in committing the offense and therefore he did not commit the felony through the use of a dangerous instrument. *Id.* The court affirmed the conviction stating that the jury was not bound by defendant's statement that he had a BB gun and from the evidence could have inferred that a real pistol, not a BB pistol, was placed against the woman's head. *Id.* In the present case, there was

1. Section 556.061(9) RSMo 1986 defines "Dangerous Instrument" as "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury."

2. Section 556.061(10) RSMo 1986 defines "Deadly Weapon" as "any firearm, loaded or unloaded, or any weapon from which a shot, readily capable of producing death or serious physical injury may be discharged ..."

3. There was some conflicting testimony whether the handle was chrome or dark-colored. However, this is irrelevant to our analysis and was a matter for the jury's resolution.

no testimony that the defendant's gun was a toy.

We find these cases to be dispositive of the issue before us. The five victims here each testified that defendant used a gun in the robberies and that they believed the gun to be real. Since defendant did not testify and no gun was ever found, the jury was not limited by any attempted inference raised on cross-examination that the weapon or instrument used may have been other than it appeared, i.e., a toy. The testimony of each witness that defendant employed a gun was before the jury unopposed except for the attempt of defendant on cross-examination to cast doubt and uncertainty. These efforts relate to matters of credibility and weight which rests with the jury. *State v. Porter*, 640 S.W.2d 125, 127–28 (Mo.1982). None of the testimony of any of the witnesses contradicted or opposed the testimonial evidence that defendant used a gun. The evidence presented by the state supports the finding of the jury that a gun was pointed at the victims and used during the commission of the robberies.

Judgment on Counts III and VII, charging armed criminal action, are affirmed.

SMITH and KELLY, JJ., concur.