Filed 12/4/23  P. v. Gonsalves CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSHUA STEPHEN GONSALVES,<br><br>    Defendant and Appellant. | F084668<br><br>(Super. Ct. No. CR-21-011193)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County.  Linda A. McFadden, Judge.

Rex Adam Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Christopher J. Rench and Kelly E. LeBel, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Joshua Stephen Gonsalves was convicted by a jury of two counts of felon in possession of a firearm, two counts of felon in possession of ammunition, possession of identifying information of 10 or more people with intent to fraud, possession of materials used for counterfeiting, and possession of counterfeit currency. The trial court sentenced defendant to a total term of 14 years eight months. On appeal, defendant contends: (1) insufficient evidence supports the conviction on count III for possession of ammunition; (2) one of the two convictions for possession of ammunition (counts III and IV) must be reversed because possession of ammunition is a single offense even if multiple rounds of ammunition are possessed; (3) the sentence on either count I for possession of a firearm or count IV for possession of ammunition must be stayed pursuant to Penal Code section 654[1]; and (4) the sentence on either count VI for possession of materials used for counterfeiting or count VII for possession of counterfeit currency must be stayed pursuant to section 654.[2] We stay the sentence on count IV and otherwise affirm.

## PROCEDURAL BACKGROUND

On March 18, 2022, the Stanislaus County District Attorney filed an amended information charging defendant with: felon in possession of a firearm, to wit a 9-millimeter handgun (§ 29800, subd. (a)(1); count I); felon in possession of a firearm, to wit a shotgun (§ 29800, subd. (a)(1); count II); felon in possession of ammunition, to wit 9-millimeter ammunition (§ 30305, subd. (a)(1); count III); felon in possession of ammunition, to wit 9-millimeter ammunition (§ 30305, subd. (a)(1); count IV); possession of identifying information of 10 or more people with intent to defraud (§ 530.5, subd. (c)(3); count V); possession of materials used for counterfeiting (§ 480,

---

[1] All further statutory references are to the Penal Code.

[2] Defendant's opening brief also challenged the validity of the upper-term sentence on count VI. In reply, however, defendant expressly withdrew this ground for appeal. We accept defendant's withdrawal and will not address the issue further.

subd. (a); count VI); and possession of counterfeit currency (§ 476; count VII). The information also alleged that defendant had a prior "strike" conviction for purposes of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), and that counts VI and VII involved sophistication and planning under California Rules of Court, rule 4.421(a)(8).

On May 11, 2022, a jury found defendant guilty on all counts. The jury also found true that counts VI and VII were committed with planning and sophistication. In a bifurcated proceeding, the trial court found true that defendant had suffered the prior strike conviction.

On June 8, 2022, the trial court sentenced defendant to an aggregate term of 14 years eight months as follows: on count VI, eight years (the four-year upper term, doubled by the prior strike conviction); on counts I, II, III, V, and VII, 16 months each (one-third of the middle term, doubled by the prior strike conviction) with each count to run consecutively; on count IV, 16 months (one-third of the middle term, doubled by the prior strike conviction) concurrent to the sentence on count III.

On July 18, 2022, defendant filed his notice of appeal.

## FACTUAL BACKGROUND

### *Search of Defendant's Car*

On November 16, 2021, around 4:30 p.m., Modesto Police officers J. Davies and G. Billing observed defendant and his wife sitting in a car parked in a parking lot at Crows Landing Road, a known high-crime area of Modesto. Davies thought defendant looked familiar, so the officers approached defendant and his wife. Davies spoke with defendant and eventually asked him if he had anything illegal inside his car. Defendant replied that he had a BB gun with "live ammunition inside of it" in the car. Davies then decided to detain defendant, and she and Billing started searching defendant's car.

Davies found the BB gun that had "live ammunition" inside of it on the passenger side backseat. Davies also found personal identifying information (such as social security cards) that belonged to people other than defendant and his wife, as well as checks made out to people other than defendant and his wife. Davies also found counterfeit currency in two places, on defendant's wife's person and tucked in the backseat of the car. Billing searched defendant's cell phone. In the photo gallery of defendant's cell phone, Billing found selfie photographs of defendant holding a shotgun, and the shotgun had distinctive stickers on it.

### Search of Defendant's Apartment

After searching defendant's vehicle, police officers subsequently searched defendant's apartment at Coolidge Avenue in Modesto around 5:00 p.m. on the same day. One officer found a shotgun that was hidden in a vent. Stickers on that shotgun matched the stickers on the shotgun seen on the selfie photographs in defendant's cell phone. Another officer found an unloaded 9-millimeter handgun in a small gun case in a kitchen cabinet. The handgun's magazine was not in the handgun itself but was next to the handgun in the case and was loaded with 9-millimeter ammunition. Finally, as relevant to this appeal, Davies found: a printer/scanner and a printer; counterfeit United States currency, some of which were in various stages of completion; and heavier paper than paper typically used for home printing. The counterfeit bills were printed on the heavier paper found in the apartment.

## DISCUSSION

### I. Sufficiency of the Evidence for Count III

#### A. Parties' Arguments

Defendant argues that there is not substantial evidence showing defendant possessed 9-millimeter ammunition, or any other "ammunition," in his car. The evidence shows that defendant said he had a BB gun with "live ammunition" in it and Davies found a BB gun with "live ammunition." The evidence suggests that whatever

4.

ammunition was involved, it was only capable of being fired from a BB gun. Further, although the amended information alleged defendant possessed 9-millimeter ammunition, no evidence showed that the BB gun was loaded with 9-millimeter ammunition.

The People argue that there is sufficient evidence to support count III. Davies testified that she found live ammunition in the back of the car, and defendant admitted to his father during a jail call that there were bullets in the clip found in the backseat of his car.

We agree with the People that sufficient evidence supports the conviction.

### B. Additional Background

#### Jail Phone Call

On December 25, 2021, defendant made telephone calls from the Stanislaus County jail. The telephone calls were recorded and appear to have been between defendant and his father. In one transcript, defendant stated that the police did not have "bullets" for the shotgun. The father responded that this did not matter because the police had found "some bullets." Defendant said he knew that. The father asked where the bullets were found. Defendant responded that the "clips were in the gun," and one gun was in a "locked box" and the other was in his "back seat."

#### Closing Arguments

Both the prosecutor and defense counsel addressed counts III and IV. The prosecutor explained the basis for count IV was the 9-millimeter ammunition found in the magazine next to the handgun, both of which were in the case in the kitchen cabinet. The prosecutor explained the basis for count III was the ammunition found in the clip of the BB gun in defendant's car. Although defense counsel misidentified the appropriate count number, she addressed the substance of both counts. With respect to count III, defense counsel said: "The ammunition that was in the car, in the BB gun, that's Count 4. There were three live rounds of 9-millimeter ammo in there. [Defendant's wife] . . . was in the

5.

passenger seat of the car, folks.  The ammo was found in the backseat on the passenger side."

### C.    **Legal Standard**

#### 1.    *Sufficiency of the Evidence*

Appellate courts resolve challenges to the sufficiency of the evidence by reviewing the entire record in the light most favorable to the judgment and determining whether the record contains " 'evidence which is reasonable, credible, and of solid value' " such that a reasonable jury could have found the defendant guilty beyond a reasonable doubt.  (*People v. Westerfield* (2019) 6 Cal.5th 632, 712.)  " '[A]fter viewing the evidence in the light most favorable to the prosecution, [we determine whether] *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' "  (*People v. Morales* (2020) 10 Cal.5th 76, 88.)  We presume the existence of every fact the jury could reasonably have deduced from the evidence in support of the judgment.  (*People v. Ware* (2022) 14 Cal.5th 151, 167.)  Reasonably deduced or inferred facts are those that logically flow from other facts established in the case.  (*Id.* at p. 168.)  Reasonable inferences are not those " ' " 'based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work.' " ' "  (*Id.* at p. 167.)  Thus, we " 'accept logical inferences that the jury might have drawn from the circumstantial evidence.' "  (*People v. Flores* (2020) 9 Cal.5th 371, 411.)  So long as the circumstances reasonably justify the jury's findings, reversal will not occur " 'simply because the circumstances might also reasonably be reconciled with a contrary finding.' "  (*Westerfield*, at p. 713.)  That is, just because "a different trier of fact could have concluded otherwise does not mean the verdict is not supported by the evidence."  (*People v. Wilson* (2021) 11 Cal.5th 259, 302.)

6.

### 2. *Possession of Ammunition*

In California, felons may not "own, possess, or have under custody or control, any ammunition or reloaded ammunition." (§ 30305, subd. (a)(1); see *People v. Bay* (2019) 40 Cal.App.5th 126, 131–132.) "[A]mmunition" is defined by statute as including "any bullet, cartridge, magazine, clip, speed loader, autoloader, ammunition feeding device, or projectile capable of being fired from a firearm with a deadly consequence. 'Ammunition' does not include blanks." (§ 16150, subd. (b).) Possession may be actual, where the ammunition is in the immediate possession or control of the defendant, or constructive, where the defendant knowingly exercises a right to control the ammunition either directly or through another person. (*Bay*, at p. 132.)

### D. *Analysis*

Defendant's argument primarily is based on the fact that he had a BB gun in his car. Specifically, defendant invites us to infer that only BBs could have been found within the BB gun's clip and that the reference to "live ammunition" was a reference to BBs. An examination of the record compels us to decline defendant's invitation.

Defendant's statements show that "ammunition" was found in the BB gun's clip. When defendant's dad asked defendant where the "bullets" were found, defendant indicated that they were in the clip in the backseat of the car and in the magazine in the "locked box" at the apartment. Bullets are understood as something fired from a firearm, not an air gun. (See <https://www.merriam-webster.com/dictionary/bullet> [as of Dec. 4, 2023] [defining "bullet" as "a round or elongated missile (as of lead) to be fired from a firearm"].) On the other hand, BBs are not fired from firearms (*People v. Clark* (2021) 62 Cal.App.5th 939, 958, fn. 14), and are understood to be small solid metal balls or shots – nothing more. (See <https://www.merriam-webster.com/dictionary/BB> [as of Dec. 4, 2023] [defining BB in part as "a shot pellet 0.175 inch in diameter for use in an air gun"].) Since bullets and BBs are different, there would be no need to respond that "bullets" were found in the BB gun's clip if the clip contained only BBs. Similarly, when

Davies asked defendant if he had anything illegal in his car, defendant told Davies that he had "live ammunition" in the BB gun. Davies also testified that she found "live ammunition" in the BB gun. As simply a small solid metal ball there is no gun powder or anything else that could make a BB "live." Thus, there is no clear or obvious basis for, or to our knowledge a generally accepted practice of, referring to BBs as "live ammunition." (Cf. *State v. Pisha* (Mo. Ct. App. 1984) 674 S.W.2d 594, 598 ["The jury was not bound by Pisha's statement that he had a BB pistol rather than a pistol which fired live ammunition."].) Further, as small solid balls that are shot by an air gun, BBs do not fit within the statutory definition of "ammunition." (See § 16150, subd. (b).) Therefore, there would be nothing illegal about defendant possessing BBs and no reason for defendant to identify "live ammunition" as something illegal if the only thing in the BB gun were BBs. Given the nature of a BB, Davies finding "live ammunition," and defendant indicating that there were "bullets" or "live ammunition" in the BB gun or the clip, the jury could have reasonably inferred that defendant was aware that some form of bullet or "ammunition" was hidden within the BB gun or clip. That is, the jury could have concluded that there was some form of "live ammunition" in addition to BBs. (Cf. *People v. Ware*, *supra*, 14 Cal.5th at p. 167 [noting that courts accept every fact the jury could reasonably deduce from the evidence].)

Such a conclusion is not only supported by defendant's words and Davies's testimony, but by defense counsel's admissions. As quoted above, defense counsel stated during closing arguments that three rounds of 9-millimeter ammunition were found in the BB gun. A criminal defendant is bound by the "open admission of his counsel and cannot mislead the court and jury by seeming to take a position on issues and then disputing or repudiating the same on appeal." (*People v. Pijal* (1973) 33 Cal.App.3d 682, 697; see *People v. Voit* (2011) 200 Cal.App.4th 1353, 1371, fn. 14; *People v. Hammond* (1938) 26 Cal.App.2d 145, 150; see also *People v. Garcia* (1864) 25 Cal. 531, 534–535 ["An admission of a fact made at the trial in open Court by . . . [defense] counsel may be

properly considered by the jury."]; *People v. Peters* (1950) 96 Cal.App.2d 671, 677.) Therefore, defendant, through his counsel, confirmed the allegation that 9-millimeter ammunition was found in the BB gun.

In sum, through defendant's statements, Davies's testimony, and defense counsel's admissions, we are satisfied the record contains " 'evidence which is reasonable, credible, and of solid value' " such that a reasonable jury could have found defendant guilty beyond a reasonable doubt on count III. (*People v. Westerfield*, *supra*, 6 Cal.5th at p. 712.)

## II.  *Counts III and IV*

### A.      *Parties' Arguments*

Defendant argues that possession of multiple rounds of ammunition does not violate section 30305 more than once and thus, cannot support more than one count of conviction.  Assuming that he possessed ammunition in his car and in his home, defendant argues that he can only be convicted for one count of section 30305 and that count III or IV must be reversed.

The People agree with defendant.  The People explain that possession of 9-millimeter ammunition supports only one count of section 30305, and case law holds that possession of the same classification of contraband at different locations constitutes a single crime.  The conviction on either count III or count IV should be reversed.

We disagree with both parties and find that reversal is unwarranted.

### B.      *Legal Standard*

Generally, possession of multiple items of contraband that are classified within a single statutory category or subdivision will support only a single violation of a possession statute.  (See *People v. Sample* (2011) 200 Cal.App.4th 1253, 1257–1258 (*Sample*) [child pornography]; *People v. Manfredi* (2008) 169 Cal.App.4th 622, 628–634 (*Manfredi*) [same]; *In re Carleisha P.* (2006) 144 Cal.App.4th 912, 923 (*Carleisha P.*) [ammunition]; *People v. Bowie* (1977) 72 Cal.App.3d 143, 146 [blank checks]; *People v.*

9.

*Harris* (1977) 71 Cal.App.3d 959, 969–971 [articles with defaced or obliterated serial numbers]; *People v. Schroeder* (1968) 264 Cal.App.2d 217, 228–229 (*Schroeder*) [narcotics identified in particular statutory subdivision].)  One exception to this rule is that possession of multiple items of a single category of contraband may support multiple violations and convictions if the contraband is possessed at different times or at different locations.  (*De La Cerda v. Superior Court* (2022) 75 Cal.App.5th 40, 59, fn. 8 (*De La Cerda*); *Sample*, at p. 1259; see *People v. Von Latta* (1968) 258 Cal.App.2d 329, 339–340; cf. *Manfredi*, at pp. 624 [agreeing that "simultaneous possession of multiple child pornography materials at the same location is chargeable as but one criminal offense under [§ 311.11]"], 634 [describing case law that holds "[contraband] found at the same time and in the same place cannot be fragmented into multiple crimes"]; *Carleisha P.*, at p. 923, fn. 6 [distinguishing *U.S. v. Gann* (9th Cir. 1984) 732 F.2d 714 on the basis that, "[i]n [*Gann*], separate charges were proper because the 'different types of ammunition . . . were received at different times and stored in different places' "]; *People v. Clay* (1969) 273 Cal.App.2d 279, 285 [citing *Von Latta* and noting that "[the case at bar] is not a case involving multiple acts of possession separated by time or space"]; but see *People v. Theobald* (1964) 231 Cal.App.2d 351, 353–354.)

### C.    *Analysis*

The parties agree defendant possessed "ammunition" in violation of section 30305, and that this violation cannot be fragmented into separate offenses, even if the ammunition was possessed in different locations.  However, as the legal standard cited above demonstrates, the fact that 9-millimeter ammunition was found at two separate locations is significant.  At the initial detention and arrest at the high-crime area parking lot, three rounds of 9-millimeter ammunition were found in defendant's car, specifically in the BB gun or clip that was in the backseat.  The other 9-millimeter ammunition was found later in time and at a different location, in a magazine in defendant's apartment.  This fact pattern is materially the same as that in *Sample*.

In *Sample*, the defendant was convicted of three counts of possessing child pornography (§ 311.11, subd. (a)).  (*Sample*, *supra*, 200 Cal.App.4th at p. 1257.)  In the defendant's backpack, the police found a hard drive and a stolen computer, both of which contained child pornography.  (*Ibid.*)  In the defendant's storage shed, the police found another computer that also had child pornography on it.  (*Ibid.*)  The Fourth Appellate District addressed whether the three separate possession convictions could be sustained.  (*Ibid.*)  *Sample* acknowledged cases that held simultaneous possession of multiple items of child pornography constituted a single offense.  (*Id.* at pp. 1257–1258.)  *Sample* then examined an analogous narcotics possession case, *People v. Von Latta*, *supra*, 258 Cal.App.2d 329, which involved two convictions for marijuana where the marijuana was found on the same day but in separate locations that were 30 miles apart.  (*Sample*, at p. 1259.)  *Sample* characterized *Von Latta* as holding that "possession offenses occurring at different times and locations, even if they occurred on the same day, are separate and distinct acts supporting separate convictions."  (*Ibid.*)  *Sample* adopted *Von Latta*'s holding and applied that holding to the facts before it.  *Sample* held that the defendant was properly convicted of two of the three possession counts:  "[The defendant's] act of actually possessing child pornography in the computer and removable hard drive found in his backpack was separate and distinct from his act of constructively possessing child pornography in the computer found in his storage shed."  (*Ibid.*)  Our court has recently cited *Sample* for the proposition that "[s]eparate and distinct acts of possession may occur when child pornography is discovered in separate locations."  (*De La Cerda*, *supra*, 75 Cal.App.5th at p. 59, fn. 8.)

We acknowledge that child pornography and ammunition are fundamentally different types of contraband.  Nevertheless, both section 30305, subdivision (a), and section 311.11, subdivision (a), prohibit possession of these items.  We detect no distinction between these statutes that would necessitate a holding in our case that is different from the holding in *Sample* or the observation in *De La Cerda*.  Because the

11.

three rounds of 9-millimeter ammunition in the back of defendant's car was found at a different time and in a different location from the 9-millimeter ammunition found in defendant's apartment, the evidence supports two distinct and separately chargeable instances of unlawful possession of ammunition.

The parties collectively cite *Carleisha P.* and *Schroeder* in support of their position. Neither case, however, is sufficiently on point. In both cases, the contraband at issue was located in a single location – different calibers of ammunition in a home closet (*Carleisha P.*) and different classifications/categories of narcotics in a box hidden in the countryside (*Schroeder*). (*Carleisha P.*, *supra*, 144 Cal.App.4th at pp. 915, 923; *Schroeder*, *supra*, 264 Cal.App.2d at pp. 220–222.) While both *Carleisha P.* and *Schroeder* concluded that multiple convictions could not be sustained, their holdings had nothing to do with the locations where the contraband was found. *Schroeder* recognized that possession of narcotics under *different* classifications/categories may be charged and punished as separate crimes (even if there is simultaneous possession that constitutes a single transaction), but concluded that the rule did not apply to multiple charges involving the *same* classification of drugs, otherwise a single crime would be improperly fragmented into multiple offenses. (*Schroeder*, at p. 228.) Similarly, *Carleisha P.* held that former section 12101, subdivision (b),[3] prohibited possession of any quantity of "live ammunition" by a minor and that possession of multiple bullets, be they of the same or different caliber, would constitute but a single offense. (*Carleisha P.*, at p. 923.) Therefore, because the ammunition in the case at bar was found at different locations, the holdings of *Carleisha P.* and *Schroeder* do not support the parties' position.

We are aware of language from *People v. Theobald* (1964) 231 Cal.App.2d 351 that appears to support the parties' position. In *Theobald*, the defendant was convicted in part of two counts of possession of marijuana, one of which was a lesser included offense

---

[3] Now section 29650.

of possession for purposes of sale. (*Theobald*, at p. 353.) One of the marijuana counts was based on marijuana fragments found in the defendant's apartment, while the other count was based on marijuana found in an exterior storage cabinet that was against a fence within the apartment complex property. (*Id.* at pp. 354–355.) The Second Appellate District concluded that one of the marijuana counts could not stand, observing that "[the defendant] was not charged with possession of [marijuana] on two different occasions nor was there any evidence to indicate the commission of two such separate offenses." (*Id.* at p. 353.) *Theobald* explained in relevant part: "At any given point of time a person is either guilty of the crime of possessing marijuana or he is not. If, in fact, he is guilty, his crime cannot be compounded merely because various portions of the prohibited contraband possessed by him at the specified time are kept or deposited in different places." (*Ibid.*)

After consideration, we decline to follow *Theobald*. First, there is no authority cited in support of the proposition that a defendant cannot be charged with separate possession charges for contraband found at different locations. Second, *Theobald* has been cited by published California cases a total of six times. None of those six cases applied or expressly agreed with *Theobald*'s characterization of possession offenses. Third, a number of cases have either expressly found or strongly implied that time or location distinctions are relevant to assessing whether single or multiple possession offenses have occurred. (See *De La Cerda*, *supra*, 75 Cal.App.5th at p. 59, fn. 8; *Sample*, *supra*, 200 Cal.App.4th at p. 1259; *Manfredi*, *supra*, 169 Cal.App.4th at pp. 624, 634; *Carleisha P.*, *supra*, 144 Cal.App.4th at p. 923, fn. 6; *People v. Clay*, *supra*, 273 Cal.App.2d at p. 285; *People v. Von Latta*, *supra*, 258 Cal.App.2d at pp. 339–340.) Fourth, we detect a significant factual distinction from *Theobald* and other possession cases. In *Von Latta* and *Sample*, the contraband was found on the defendant's person (in the defendant's hand in *Von Latta* and in the defendant's backpack in *Sample*) and at the defendant's real property while the defendant was not present (a home 30 miles away in

13.

*Von Latta* and in a storage shed in *Sample*).**4**  (*Sample*, at p. 1257; *Von Latta*, at p. 339.) In other words, *Von Latta* and *Sample* involved two separate "geographic possessions," one on the person and the other away from the person at a separate physical address.  In contrast, the marijuana in *Theobald* was found in the defendant's apartment and in a cabinet in a public area within the apartment complex property.  (*People v. Theobald*, *supra*, 231 Cal.App.2d at pp. 354–356.)  While it is technically true that the marijuana was found in two different "places" within the apartment complex, the marijuana was not found in separate geographic addresses or "locations."  That is, the marijuana was found only at the apartment complex's address, just in different places within that address and to which defendant had access.  Because the ammunition in the case at bar was found in different geographic locations, and not different places within a single address, we conclude that the analysis of *Sample* more aptly determines whether single or multiple possession offenses are at issue.  (Compare *Sample*, at p. 1257 and *Von Latta*, at p. 339 with *Theobald*, at pp. 354–356.)  For these reasons, and in the absence of binding authority to the contrary, we decline to follow *Theobald*.

In sum, we will not reverse counts III or IV for improperly fragmenting a single offense into separate offenses.  (*De La Cerda*, *supra*, 75 Cal.App.5th at p. 59, fn. 8; *Sample*, *supra*, 200 Cal.App.4th at p. 1259; cf. *Manfredi*, *supra*, 169 Cal.App.4th at pp. 624, 634; *People v. Clay*, *supra*, 273 Cal.App.2d at p. 285.)

---

**4** *Sample* does not disclose the distances involved.  Nevertheless, given *Sample*'s reliance on *Von Latta*, its description of the contraband as being found "at two different times in two separate locations," and its explanation that contraband was in the defendant's actual possession and constructive possession, we read *Sample* as meaning that the defendant was wearing the backpack when arrested and was arrested away from his storage shed.  (*Sample*, *supra*, 200 Cal.App.4th at pp. 1257–1259.)

### III. *Section 654*

#### A. *Parties' Arguments*

Defendant argues that section 654 precludes punishment on counts I and IV, and also precludes punishment on counts VI and VII. With respect to counts I and IV, there is no evidence that possession of the handgun and ammunition in the same case was part of a divisible course of conduct with separate intents. Therefore, the sentence on count I or IV must be stayed. With respect to counts VI and VII, there is no substantial evidence that the acts of possessing counterfeit currency and possession of materials used to make counterfeit currency were acts composed of divisible and independent courses of conduct with differing objectives. Rather, the evidence shows an indivisible course of conduct with a single objective of producing counterfeit currency. Therefore, the sentence on count VI or VII must be stayed.

The People agree that the ammunition in count IV and the handgun in count I were possessed with a single intent. With respect to counts VI and VII, however, the People argue that defendant harbored separate intents. For count VI, defendant was only required to possess certain materials with knowledge that the materials would be used to make counterfeit notes. For count VII, defendant was required to have the intent to pass or use the counterfeit note as genuine. The different intents show that different criminal objectives were at issue and thus, section 654 does not prescribe separate punishments.

We agree with the parties that section 654 precludes sentencing defendant on count I and count IV together; we agree with the People that section 654 does not preclude punishment on count VI and count VII together.

#### B. *Additional Background*

At sentencing, the prosecutor argued that section 654 did not apply with respect to counts I and IV and to counts VI and VII. With respect to counts I and IV, the prosecutor argued that case law recognized that section 654 applies to circumstances in which ammunition is found in a firearm. However, because the ammunition was not in the

15.

firearm, there was no section 654 problem. With respect to counts VI and VII, the prosecutor argued that possession of a completed product (counterfeit currency) is different from possessing the product used to produce the completed product (heavy paper and scanning/printing equipment). Because possession for production is different from possession for use, there was no section 654 problem. Defense counsel disagreed and referred the trial court to her sentencing brief.

The trial court did not address section 654 with respect to counts I and IV. With respect to count VII, the court stated that count VII was "a separate charge as well, separate acts, and so I'm running that consecutive as well."

### C.     *Legal Standard*

Section 654 prohibits "multiple punishment for a single act or omission, or an indivisible course of conduct." (*People v. Deloza* (1998) 18 Cal.4th 585, 591.) When applicable, section 654 precludes the imposition of concurrent sentences. (*People v. Duff* (2010) 50 Cal.4th 787, 796.) "Whether a defendant may be subjected to multiple punishment under section 654 requires a two-step inquiry, because the statutory reference to an 'act or omission' may include not only a discrete physical act but also a course of conduct encompassing several acts pursued with a single objective." (*People v. Corpening* (2016) 2 Cal.5th 307, 311; see *People v. Kopp* (2019) 38 Cal.App.5th 47, 90.) The first inquiry is whether the crimes were completed by a single physical act. (*Corpening*, at p. 311; *Kopp*, at p. 90.) The second inquiry is, if a single physical act is not involved, whether the crimes involve an indivisible course of conduct. (*Corpening*, at p. 311; *People v. Washington* (2021) 61 Cal.App.5th 776, 795.) It is the defendant's intent and objective, not the temporal proximity of the offenses, that determine if there is an indivisible course of conduct. (*People v. Hicks* (1993) 6 Cal.4th 784, 789; see *People v. Jackson* (2016) 1 Cal.5th 269, 354.) If the defendant harbors a single intent and criminal objective, then section 654 will apply and permit punishment for only a single offense. (*Jackson*, at p. 354; *Kopp*, at p. 90.) Where the offenses were merely incidental

to or were the means of accomplishing or facilitating one objective, the defendant will be found to have harbored but a single intent. (*Hicks*, at p. 789.) If the defendant harbors multiple intents and criminal objectives, then section 654 will not apply, and the defendant may be punished for each offense. (*Jackson*, at p. 354; *Kopp*, at p. 90.)

A trial court's section 654 determinations, either express or implied, will be affirmed if they are supported by substantial evidence. (*People v. Brents* (2012) 53 Cal.4th 599, 618; *People v. Vasquez* (2020) 44 Cal.App.5th 732, 737.) Substantial evidence is evidence that is reasonable, credible, and of solid value. (*People v. Armstrong* (2016) 1 Cal.5th 432, 450.) The evidence is examined in the light most favorable to the section 654 determination. (*Vasquez*, at p. 737; see *Armstrong*, at p. 450.) Appellate courts presume the existence of every fact the trial court could have reasonably deduced from the record. (*People v. Latten* (2021) 63 Cal.App.5th 574, 577; *Vasquez*, at p. 737.) If a trial court sentences a defendant to separate terms without making an express finding that the defendant harbored separate intents and objectives, the trial court will be deemed to have made an implied finding that separate intents and objectives existed for each offense. (*In re L.J.* (2021) 72 Cal.App.5th 37, 43; *People v. Islas* (2012) 210 Cal.App.4th 116, 129.) When multiple convictions arising out of the same act or course of conduct are involved, in order to give effect to section 654's prohibition against multiple *punishment*, the trial court must stay *execution* of the sentence on the convictions for which multiple punishment is prohibited. (*People v. Correa* (2012) 54 Cal.4th 331, 336–337; *People v. Reed* (2006) 38 Cal.4th 1224, 1227.)

### D. Analysis

#### 1. Counts I and IV

It has been recognized that " 'simultaneous possession of different items of contraband' " can constitute separate acts and warrant separate punishments without violating section 654. (*People v. Jones* (2012) 54 Cal.4th 350, 358; see *People v. Washington* (2021) 61 Cal.App.5th 776, 796, fn. 10.) However, courts also have

recognized that section 654 prohibits punishment for both unlawful possession of a firearm and unlawful possession of ammunition when the only ammunition at issue was either found inside, or had been fired from, the firearm. (*People v. Broadbent* (2020) 47 Cal.App.5th 917, 922–923; *People v. Sok* (2010) 181 Cal.App.4th 88, 100; *People v. Lopez* (2004) 119 Cal.App.4th 132, 138.) These cases generally rely on the principle that courts are not to parse the defendant's objective too finely for purposes of section 654; they then conclude that there is but a single course of conduct and single objective to possess a fully operable firearm. (*Broadbent*, at p. 922; *Lopez*, at p. 138 [citing *People v. Britt* (2004) 32 Cal.4th 944, 953].)

In this case, the 9-millimeter ammunition that served as the basis for count IV was not found inside the handgun, which served as the basis for count I. Rather, the ammunition was found loaded in a magazine. The loaded magazine and the handgun were found together in the same gun case in a cabinet. The handgun was unloaded, and there is no evidence that there was ammunition other than the ammunition found in the magazine.

We believe that the rationales of *Broadbent*, *Sok*, and *Lopez* apply to this case. By storing the unloaded handgun in the same case as the loaded magazine, it is apparent that defendant intended to have a fully operational firearm. In a matter of seconds within opening the box, defendant would be able to load the magazine into the handgun and have a fully operational firearm. The only difference between this case and *Broadbent*, *Sok*, and *Lopez* is that defendant stored his unloaded firearm in a relatively safer manner next to the ammunition. Were we to hold that this difference is material and demonstrates separate intents and objectives, we would be running afoul of the admonition to not parse objectives too finely. (See *People v. Britt*, *supra*, 32 Cal.4th at p. 953; *People v. Broadbent*, *supra*, 47 Cal.App.5th at p. 922.) Therefore, we agree with the parties that defendant cannot be punished for both possessing the firearm in count I and possessing the ammunition in count IV. (Cf. *Broadbent*, at pp. 922–923; *People v.*

18.

*Sok*, *supra*, 181 Cal.App.4th at p. 100; *People v. Lopez*, *supra*, 119 Cal.App.4th at p. 138.)

Under section 654, a trial court has the discretion to choose which offense will have a sentence imposed and which offenses will have their sentences stayed, irrespective of which offense carries the longer term. (*People v. Aguayo* (2022) 13 Cal.5th 974, 992, fn. 6.) Here, the trial court's sentence indicates that it would stay count IV. As stated above, the primary sentence was count VI. The court imposed a 16-month sentence on each of the other counts and ran each count consecutively, except for count IV which ran concurrently with count III. Thus, count IV was the only count that the court intended to run simultaneously. The effect of the concurrent sentence on count IV is that a sentence was imposed, but the imposed sentence did not actually add any additional time of incarceration. Staying count IV would have the same effect in terms of total incarceration. Given these considerations, we believe that the court would stay the sentence on count IV. Accordingly, we hold the sentence on count IV is required to be stayed pursuant to section 654. (*People v. Deloza*, *supra*, 18 Cal.4th at pp. 591–592; see *Aguayo*, at p. 992, fn. 6.)

### 2.    *Counts VI and VII*

The trial court held that counts VI and VII were "separate acts" that involved "separate charge[s]." However, the court did not expressly hold that defendant harbored separate intents and objectives when he committed counts VI and VII. Therefore, we deem the court to have impliedly found separate intents and objectives. (*In re L.J.*, *supra*, 72 Cal.App.5th at p. 43; *People v. Islas*, *supra*, 210 Cal.App.4th at p. 129.) Viewing the record in the light most favorable to these deemed findings, we conclude that substantial evidence supports them.

19.

To be convicted of possessing counterfeit currency, a defendant must, among other things, have the intent to defraud another. (§ 476; *People v. Seo* (2020) 48 Cal.App.5th 1081, 1088.) To be convicted of possession of items used for counterfeiting, there is no requirement that the defendant intend to defraud anyone; rather, a defendant must possess the items with knowledge that they will be or had been used to counterfeit. (§ 480, subd. (a); *Seo*, at p. 1087.) Thus, the intent elements of counts VI and VII are different, and this difference validates the trial court's implied finding of separate intents.

With respect to objectives, there was no direct evidence regarding any overall schemes or plans that defendant had for either the counterfeit currency or the printers, scanner, and "heavier" paper. Nevertheless, we think that it is a reasonable deduction that defendant possessed the counterfeiting materials with the objective of periodically making and disseminating counterfeit currency whenever he chose to do so. On the other hand, considering the completed counterfeit currency found in defendant's car, in his apartment, and on his wife's person, it can reasonably be inferred that defendant's objective was to quickly spend the counterfeit currency, thereby keeping genuine currency for himself and defrauding anyone unfortunate enough to accept a counterfeit bill from him. In other words, the evidence could reasonably support an inference that defendant possessed the counterfeit currency to immediately defraud another, but possessed the counterfeiting equipment to be able make counterfeit currency at some point in the future. (See *People v. Latten*, *supra*, 63 Cal.App.5th at p. 577 [all reasonable inferences are made in support of implied findings].) These are separate objectives.

In sum, because the intent elements of section 476 and section 480, subdivision (a) are different, and because different criminal objectives can reasonably be inferred from the evidence, the trial court did not contravene section 654 by imposing a sentence on both count VI and count VII. (*People v. Jackson*, *supra*, 1 Cal.5th at p. 354.)

## DISPOSITION

The sentence on count IV is stayed pursuant section 654.  The judgment is otherwise affirmed.  The trial court is directed to issue an amended abstract of judgment reflecting the modification and to forward a certified copy to the appropriate authorities.


DETJEN, Acting P. J.

WE CONCUR:


FRANSON, J.


SMITH, J.

21.